**STATE of Missouri, Respondent,**

v.

**Anthony WHITMILL, Appellant.**

**No. 71467.**

Supreme Court of Missouri,
En Banc.

Nov. 14, 1989.

Rehearing Denied Dec. 12, 1989.

L. Patrick O'Brien, Kansas City, for appellant.

William L. Webster, Atty. Gen., Scott L. Templeton, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

Anthony Whitmill was convicted by a jury of two counts of first degree assault, section 565.050, RSMo 1986, and two counts of armed criminal action, section 571.015, RSMo 1986. The jury assessed his punishment at life imprisonment on each count, and the court sentenced him to four consecutive life terms of imprisonment. Judgment was entered accordingly.

The Court of Appeals, Western District, affirmed the judgment by an opinion that adopted a per se exclusionary rule for expert testimony regarding the credibility of eyewitness identifications. This Court granted transfer to examine whether the Western District's holding is in harmony with *State v. Lawhorn*, 762 S.W.2d 820 (Mo. banc 1988). The principal question is whether the trial court abused its discretion in refusing to allow expert testimony on the question of identification. The appellant contends that trial courts must retain discretion as to admissibility of such expert testimony and argues that the trial court abused its discretion by refusing testimony of his expert witness. The respondent contends the appellant was sufficiently protected by existing procedures and argues that the trial court did not abuse its discretion in excluding appellant's proffered expert testimony. This Court agrees with respondent's position and confirms its holding in *Lawhorn*. Affirmed.

On February 17, 1987, two brothers, Nivey and Theordis Mitchell, approached a

group of women outside their home in Kansas City and told them to stop soliciting customers for sexual services there. The women took offense, the conversation became heated, and Theordis pushed one of them to the ground. She ran away and reappeared with Anthony Whitmill. Whitmill then shot Nivey below the chest; he fell, and Whitmill shot him a second time in the thigh. Theordis started to run and Whitmill shot him in the right wrist, the left wrist, and the stomach.

Whitmill testified that he did not shoot the Mitchells and that he was asleep at a friend's house on the evening of the shootings; the friend corroborated this testimony in court. A witness, Leon Gunn, testified that he, rather than Whitmill, had committed the shootings, and that the handgun which the State had offered as evidence belonged to him. Ballistics evidence showed that it was the gun from which the bullets injuring the Mitchells had been fired.

## I.

Whitmill claims the trial court abused its discretion in refusing to allow expert testimony regarding the reliability of eyewitness identification. He contends the court should have overruled the State's motion in limine to prevent Alvin G. Goldstein, a psychology professor at the University of Missouri, from testifying. He states that Professor Goldstein would have testified about some of the psychological factors affecting the reliability of eyewitness identification, such as stress, anger, and fear. He argues that Nivey Mitchell was in a state of emotional arousal at the time of the shootings and that this excitement affected the accuracy of the impression encoded by his memory as to his assailant's appearance.

■ Generally, expert testimony is inadmissible if it relates to the credibility of witnesses because this constitutes an invasion of the province of the jury. *Lawhorn*, 762 S.W.2d at 823; *State v. Taylor*, 663 S.W.2d 235 (Mo. banc 1984).

In *Lawhorn* this Court held that a trial court may, in its discretion, exclude expert testimony regarding the credibility of eyewitness identifications. The defendant in that case would have offered expert testimony as to alleged difficulties of cross-racial identifications. This Court stated, "[S]uch matters are within the general realm of common experience of members of a jury and can be evaluated without an expert's assistance.... The fact that in many instances identifications may be unreliable and that the state's case and the subsequent determination of guilt or innocence may depend on the credibility of eyewitness identifications, does not leave a criminal defendant without protection if the trial court, in its discretion, denies the admissibility of expert testimony in this regard." *Lawhorn*, 762 S.W.2d at 823.

■ In Whitmill's trial several safeguards ensured that the defendant had an adequate opportunity to apprise the jury of the difficulties inherent in an eyewitness identification. The defendant fully cross-examined both Nivey and Theordis Mitchell, who identified the photograph of Whitmill as the man who shot them. Whitmill also had an opportunity to speak to the jury about the problem of identification in the opening statement and in the closing argument; and the court instructed the jury on the factors it should consider in determining whether the identification was reliable. MAI–CR 3d 302.01. Thus, the *Lawhorn* protections, mentioned above, were present; and the trial court did not abuse its discretion in refusing to permit Professor Goldstein's testimony.

## II.

■ Whitmill also contends that the trial court erred in refusing to grant a continuance or a new trial when he discovered, the day before the trial, that police officers knew of two other witnesses, Nelson and Thomas, in addition to Leon Gunn, who would give evidence exculpatory to Whitmill. This information was subject to disclosure during discovery, although there was no report of it in the prosecution file. Yet, as the court of appeals reasoned: "The defense had the benefit of testimony from Gunn himself and two eyewitnesses, testimony which the jury chose not to believe. It cannot be said that any reasonable probability existed for a different result in the case because the jury did not

have the testimony of Nelson and Thomas. There was no fundamental unfairness requiring the grant of a new trial."

## III.

██ Whitmill contends that his conviction and sentence on two counts of armed criminal action violated the double jeopardy clause of the fifth amendment of the United States Constitution ("nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb"). He contends that the punishment enhancement of armed criminal action penalties, when added to the first degree assault charges, constitutes double jeopardy. This question was put to rest in *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). The Supreme Court determined that where the legislature has adopted discrete statutes defining crimes that it intended be separately punishable, the separate charges may be tried in one proceeding before the same court or jury irrespective whether the separate charges each contain identical elements. *Hunter*, 459 U.S. at 365–369, 103 S.Ct. at 677–79; *State v. Wahby*, 775 S.W.2d 147 (Mo. banc 1989).

The judgment is affirmed.

BLACKMAR, C.J., and ROBERTSON, RENDLEN, COVINGTON and BILLINGS, JJ., concur.

FLANIGAN, Special Judge, concurs in result in Part I and concurs in Parts II and III in separate opinion filed.

HOLSTEIN, J., not participating because not a member of the Court when the case was submitted.

GEORGE M. FLANIGAN, Special Judge, concurring in result with respect to I and concurring in full with respect to II and III.

In *State v. Taylor*, 663 S.W.2d 235, 239 (Mo. banc 1984), this Court said:

The rule in Missouri is that expert opinion testimony "should never be admitted unless it is clear that the jurors themselves are not capable, for want of experience or knowledge of the subject, to draw correct conclusions from the facts proved."

\* \* \* \* \* \*

However, expert opinion testimony is not admissible as it relates to credibility of witnesses.

The principal opinion states: "In Whitmill's trial several safeguards ensured that the defendant had an adequate opportunity to apprise the jury of the difficulties inherent in an eyewitness identification." Those safeguards—right of cross-examination, right to make an opening statement and a closing argument, the giving of MAI–CR3d 302.01—are available to every criminal defendant. Indeed, if the *Taylor* standard for admissibility is met by the defendant, the state's evidence would be insufficient to support a conviction.[1]

In my view, the admissibility of the testimony of an alleged expert on the reliability of eyewitness identification is not a matter lying within the sound discretion of the trial court. Under the rule as stated in *Taylor*, the proffered evidence was inadmissible and the trial court had a duty to exclude it.

I respectfully concur in the result with respect to part I. I concur fully with parts II and III of the principal opinion.

---

1. *See generally* 46 ALR4th 1047 (Admissibility, at criminal prosecution, of expert testimony on reliability of eyewitness testimony.) Some of the cases collected there contain language to the effect that the trial court did not abuse its discretion in excluding such testimony. Most, if not all, of the cases, however, are appeals by the defendant whose offer of the testimony was rejected by the trial court. If the trial court had *admitted* the testimony, the defendant would not complain of that fact on appeal and, at least ordinarily, the state could not appeal. Thus, appeals involving the propriety of the trial court's action in admitting the testimony, as an exercise of discretion, are rare or nonexistent.