**STATE of Missouri, Respondent,**

v.

**Michael CUNNINGHAM, Appellant.**

**Michael CUNNINGHAM, Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 60676, 62314.

Missouri Court of Appeals, Eastern District, Division Three.

Oct. 19, 1993.

---

Susan Eckles, Marilynn Bydlund, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., David B. Cosgrove, Asst. Atty. Gen., Jefferson City, for respondent.

SIMON, Presiding Judge.

Appellant, Michael Cunningham, appeals his jury conviction for first degree burglary in violation of Section 569.160 R.S.Mo.1986. Appellant was sentenced as a prior offender to fifteen years imprisonment. Appellant also appeals the denial of his Rule 29.15 post-conviction relief motion alleging ineffective assistance of trial counsel.

On appeal, appellant claims the trial court erred in: (1) denying his motion to force the state to elect between charging appellant with first degree burglary with intent to steal or with intent to rape and his motion for new trial because the failure of the court to force the state to elect the intent element of burglary denied appellant his right to be informed of the charges against him, his right to effective assistance of counsel, and his right to a fair trial; and (2) failing to intervene sua sponte in the state's closing and rebuttal arguments when the prosecutor improperly referred to appellant's failure to testify and in denying appellant's motion for new trial for the same reason. Appellant also claims that the motion court erred in denying his Rule 29.15 motion based on ineffective assistance of counsel in that trial counsel failed to: (1) preserve a *Batson* issue for appeal; and (2) request the trial court to allow appellant to introduce expert testimony on eyewitness identification. We affirm.

The sufficiency of the evidence is not in dispute. The evidence viewed in a light most favorable to the verdict reveals the following. Victim lived in a first floor apartment in an apartment building at 6452 Alamo, Clayton, St. Louis County, Missouri. On October 27, 1988 at about seven p.m., she entered the apartment building through the front door, which was always open. She then unlocked her apartment front door, entered, and closed the door without locking it. Her apartment had a back door which led to the back door of the apartment building, which was always locked. When she entered her apartment, she placed a bank envelope and her purse on top of a stereo speaker next to the front door.

She spent the evening cleaning her apartment, doing laundry, and packing for a trip starting the next day. While doing so, she turned on all of the lights in her apartment.

Around 10 p.m., she took her trash to the dumpster located near the back door of the building. She exited her apartment through the back door, and went out the back door of the building. The rear of the building was lit with a floodlight attached to the building, a streetlight over the dumpster, and a streetlight in the alley next to the building.

As she walked to the dumpster, she was startled to see a man whom she did not recognize approaching her. She later identified this man as appellant. As she reached the dumpster, appellant came within an "arm's length" of her and said, "Let me help you with that." She said, "No, no, that's okay." Appellant lifted and held the lid of the dumpster for her as she dumped the trash. After dumping her trash, she turned and walked to the back door of the building and entered. From the back doorway, she watched appellant walk away from the dumpster until he was out of sight. From the time she left the building to when she could no longer see appellant, she viewed appellant for about thirty seconds to one minute.

Five minutes after returning to her apartment, she went to the laundry room to retrieve her laundry. After spending three or four minutes in the laundry room, she went back to her apartment. She took her suitcase out of her bedroom and placed it in her dining and living room area where she folded and packed her clothes. She also hung some clothes on the doorknob of a nearby closet.

Sometime between 10:30 and 10:45 p.m., her friend, Bruce, entered the apartment through the front door. He told victim that the front door was unlocked. Victim told him she was not aware of it.

As she hung another item on the doorknob, she noticed the closet door moving slightly. She opened the door, and saw appellant crouched in the closet, holding onto the inside doorknob. She looked at appellant for about five seconds and recognized him as the man she had encountered earlier at the dumpster.

Terrified, she pushed the door partially closed and ran into the kitchen, where she whispered to Bruce that there was a man in the living room closet. He went to the closet and found the door open and no one inside. He then discovered the front door was open. Bruce and victim searched the rest of the apartment but did not find appellant, who had apparently entered and exited the apartment through the front door. At some point during the search, he called the police who arrived at the apartment five minutes later.

Victim's description given to the police was of a black male in his mid-to-late twenties, about five-foot seven or eight, 170 pounds, with a moustache, wearing a baseball cap, blue jeans, and a blue jacket.

On November 28, 1988, a Clayton police detective visited victim at work and showed her six photographs, and she told the detective none of the men pictured was the intruder. In December 1988, the detective met with victim at the Clayton Police Department where the detective showed her a second photo array. Victim picked appellant's photo out of the array and identified him as the intruder.

On May 20, 1991, appellant was charged with first degree burglary pursuant to Section 569.160 R.S.Mo.1986. The indictment and the information in lieu of indictment alleged that appellant knowingly entered unlawfully an inhabitable structure possessed by the victim for the purpose of committing the crime of stealing or rape therein while victim was present in the structure.

On July 15, 1991, during voir dire, the prosecution questioned venireperson Taylor Calomese, who is black. In his responses, venireperson Calomese testified that: his step-daughter had been assaulted by a boyfriend in front of his residence four years ago; his car had been broken into twice; his automobile's hubcaps and skirt had been stolen; and his cousin was a police officer. The prosecutor subsequently exercised one of his peremptory strikes against Mr. Calomese. During recess, appellant's trial counsel and the prosecutor met with the court in camera. Appellant's counsel told the court the following:

[Defense Counsel]: ... In terms of Batson, I just wanted to clarify for the record. My understanding was there were four black persons who made the panel from which we made our strikes. No. 1, Lizzie Mathis; No. 13, Taylor Calomese; No. 16, Valerie Pope; 18, Norman Mathis. I think those were the persons who were in the panel from which we made our six strikes. There's another black, juror 28, in the alternate pool. Mr. Avioli has struck one of the black jurors, who is 13, Taylor Calomese.

My understanding is that—I don't really have a Batson issue. For that reason I am not going—because I am left with three black jurors in my panel, I am not going to make a Batson objection at this time.

THE COURT: All right....

Soon after making this statement and during the same meeting with the court, appellant's trial counsel objected to the charge of first degree burglary with intent to steal or to rape on the grounds that the intent to steal and the intent to rape are inconsistent. Trial counsel orally moved the court to force the state to elect whether it was charging appellant with first degree burglary with intent to steal or with intent to rape, and the court overruled the motion. Following presentation of its evidence, the state rested. Appellant presented no evidence, but moved for directed verdict of acquittal. The trial court denied the motion, but ruled that the state had not presented sufficient evidence to submit to the jury an instruction on first degree burglary with intent to rape.

During his closing argument, the prosecutor noted four times that the evidence was "uncontroverted". The prosecutor made the following statements:

\*   \*   \*   \*   \*   \*

(1) ....the Judge instructed you on what 'unlawfully' means. She tells you it means to enter some place without the privilege to do so. It's uncontroverted. She gave him no consent to come in there. He is crouched down in the closet. Is there any doubt he didn't have a right to be there? No doubt.

(2) Second, 'and entered an inhabitable structure'. We know it's an inhabitable structure. This is where she lives, calls home—no doubt about it. '—and located at 6452 Alamo and possessed by victim'. That's all uncontroverted. No evidence to the contrary....

\*   \*   \*   \*   \*   \*

(3) Face to face again with the same man that she saw for thirty seconds outside. But this time it's a little more scary. This time he is inside her home, crouched inside that closet. Is she ever

going to forget that face? She is face to face with uncontroverted evidence for thirty-five seconds under good lighting. There is no evidence this is a dark room. Face to face, folks.

In addition, the prosecutor said the following during his rebuttal: "What was her opportunity to see? It is now uncontroverted, she admits it for you again, the evidence is thirty seconds." Appellant's trial counsel made no objections to the four statements. After closing arguments, the court submitted the case to the jury, and after deliberating three hours, the jury returned a verdict of guilty. On August 9, 1991, appellant's counsel moved for a new trial, which the trial court overruled. The court then sentenced appellant as a prior offender to fifteen years.

On December 12, 1991, appellant filed a *pro se* Rule 29.15 post-conviction relief motion which alleged ineffective assistance of trial counsel. Appointed counsel filed an amended motion on March 2, 1992. The evidentiary hearing was held on May 1, 1992. On direct examination, trial counsel testified that she did not object to the state striking venireperson Calomese because only one of the state's six strikes was against a black person, leaving three blacks on the venire panel. On cross-examination, counsel stated that she had tried twenty-six felony cases. She recalled that venireperson Calomese testified about how he and his stepdaughter were victims of crime, and that his cousin was a police officer. She also remembered that venireperson Calomese behaved oddly while testifying. Counsel also remembered that she probably did not object based on her trial experience, venireperson Calomese's testimony, and her perception of his demeanor.

Also at the hearing, appellant introduced the testimony of Alvin C. Goldstein, Ph.D., an alleged expert on the reliability of eyewitness identification. Dr. Goldstein stated on direct that he would have testified at the trial on the issues of: cross-racial identification; over-estimation of the duration of the crime; the noncorrelation between witness confidence and accuracy of the identification; and the prejudicial photographic lineup where appellant was identified. On cross-examination, Dr. Goldstein testified he had not tested victim and had no independent means of determining her reliability as an eyewitnesses. The motion court denied the motion on March 27, 1992.

In his first point, appellant contends that the trial court abused its discretion when it denied appellant's oral motion to force the state to elect whether it was charging appellant with first degree burglary with intent to steal or with intent to rape and his motion for new trial. Appellant argues the court's error denied him his rights to be informed of the charges against him, to prepare and present an adequate defense, and to receive effective assistance of counsel, thus violating his rights under the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, and Sections 10 and 18(a) of the Missouri Constitution.

■ An information or indictment must contain all essential elements of an offense charged as set out in the statute, and must clearly apprise defendant of the facts constituting the offense so as to enable the defendant to prepare a defense, to bar future prosecution for the same offense, and to permit the trial court to decide whether sufficient facts are alleged to support a conviction. *State v. Hogan,* 748 S.W.2d 766, 770[9] (Mo.App.1988). An information cannot charge a defendant with the commission of a crime in one or more inconsistent ways. *State v. Dagley,* 793 S.W.2d 420, 423[5, 6] (Mo.App.1990). When an indictment fails to set out facts necessary for the accused's defense, the accused may challenge it with a bill of particulars. Rule 23.04; *State v. Fuller,* 753 S.W.2d 328, 331[6] (Mo.App.1988). The purpose of a bill of particulars is to enable the accused to prepare for trial, to prevent surprise, and to restrict the state to proving what defendant set forth in the bill. *State v. Mosely,* 735 S.W.2d 46, 48 n. 1[1, 2] (Mo.App.1987). The failure to file a motion for a bill of particulars waives raising the issue of lack of specificity on appeal. *State v. Stewart,* 815 S.W.2d 9, 11[3] (Mo.App.1991). If no bill of particulars is filed, the court on appeal presumes that the defendant was satisfied with the content of the information. *Id.*

Appellant asserts that his oral motion requesting the court to force the state to elect between first degree burglary with intent to steal and first degree burglary with intent to rape was the equivalent to a bill of particulars. Appellant cites no authority in support of this proposition. Appellant contends that the trial court should have granted its oral motion because the crimes of burglary with intent to steal and burglary with intent to rape are inconsistent charges. Appellant claims that because stealing and rape are two completely separate crimes requiring proof of different elements, the charges in the indictment and information in lieu of indictment are inconsistent. Appellant relies on *State v. Fox*, 46 S.W.2d 544 (Mo.1932) in support. In *Fox*, the state charged defendant with possessing a deadly weapon while "in charge of or passenger" in an automobile in which intoxicating liquor was being transported. *Id.* at 544. The court held that the information was inconsistent because it charged the defendant with two inconsistent roles. *Id.* at 546[3, 4]. Here, appellant contends that due to the inconsistent roles in the allegations, he was unable to prepare a defense because he did not know upon which charge he would be tried. Appellant further argues that trial counsel was unable to effectively cross-examine and develop a theory of defense because counsel did not know for which crime appellant was being tried until the state concluded its case. For these reasons, appellant concludes he was deprived of his rights to be informed of the charges against him, to prepare and present an adequate defense, and to receive effective assistance of counsel.

■ Assuming arguendo that appellant's oral motion is equivalent to a bill of particulars, the trial court did not err. The trial court has broad discretion in denying or granting a bill of particulars and its ruling will not be reversed without an abuse of discretion. *State v. Raines*, 748 S.W.2d 865, 869[4] (Mo.App.1988). *Fox* is inapposite. While one cannot be a driver and a passenger of an automobile at the same time, one can enter a dwelling simultaneously intending to steal and rape because intending to commit either act does not exclude the commission of the other. In any event, we do not perceive that the appellant was prejudiced as a result of the charge. We caution that the better practice would be to submit alternative counts in the indictment rather than a single count with alternative charges. See *State v. Milentz*, 547 S.W.2d 164, 167 (Mo.App.1977) ("It has long been the rule in Missouri that the State may charge a defendant with an offense in alternative counts for the purpose of meeting the evidence that may be adduced at trial." (Footnote omitted.)); MACH–CR p. XIII ("Each disjunctive must be supported by evidence unless the terms are merely descriptive or synonymous." (Citations omitted.)). Point denied.

In his second point, appellant contends the trial court plainly erred by failing to intervene *sua sponte* when the prosecutor referred to appellant's failure to testify during the state's closing and rebuttal arguments. Specifically, the prosecutor referred to the evidence as "uncontroverted" three times during closing argument and once during rebuttal. Appellant contends the prosecutor made four indirect references to appellant's failure to testify in violation of his rights under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Sections 10 and 19 of the Missouri Constitution.

■ Claims made for the first time on appeal are reviewed under plain error. Rules 29.12, 30.20. "Whether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. We are guided by *State v. Lee*, 841 S.W.2d 648 (Mo. banc 1992). In *Lee*, the accused argued for the first time on appeal that the prosecutor's references to the evidence being "uncontroverted" during his closing argument violated his right against self-incrimination under the Fifth Amendment of the U.S. Constitution and Article I Section 19 of the Missouri Constitution. *Id.* at 653[7]. The Court held there was no plain error, reasoning that the trial court has wide discretion in controlling the scope of closing argument because it is able to observe the contested incidents and determine their prej-

udicial effect. *Id.* at [8, 9]. The Court went on to explain that a reviewing court will disturb the trial court's decision only where the references are direct and certain. *Id.* Finally, the Court stated that "the prosecutor's statements ... that the evidence is 'uncontroverted' were merely comments on the relative weakness of the appellant's case, not direct and certain references to appellant's failure to testify." *Id.*

▆▆ Here, we find that the prosecutor's statements that the evidence was "uncontroverted" did not directly and certainly refer to the appellant's failure to testify. In his closing argument, the prosecutor argued that the evidence was "uncontroverted" that appellant entered an inhabitable structure unlawfully, and that victim looked at appellant for thirty-five seconds. In his rebuttal, the prosecutor argued that the evidence was "uncontroverted" that victim saw appellant at the dumpster for thirty seconds. In these statements, the prosecutor was merely pointing out the weakness of appellant's defense and not appellant's failure to testify. Point denied.

▆▆ In appellant's final two points, he contends the motion court erred when it denied his Rule 29.15 motion based on ineffective assistance of counsel. To prevail on an ineffective assistance of counsel claim a movant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064[5], 80 L.Ed.2d 674, 693 (1984). To prove deficient performance a movant must show that counsel's acts or omissions were outside the range of professionally competent assistance. *State v. Flenoid,* 838 S.W.2d 462, 470[18–21] (Mo.App. 1992). To do this movant must overcome the presumption that counsel's challenged acts of omissions were sound trial strategy. *Id.* The failure to make a meritorious objection is not incompetence per se. *Jones v. State,* 784 S.W.2d 789, 793[7–9] (Mo. banc 1990). To show prejudice, a movant must show there was a reasonable probability that, but for the errors of his counsel, the jury would have had reasonable doubt respecting his guilt. *Flenoid,* 838 S.W.2d at 470[20]. If a movant makes an insufficient showing on either the

deficient performance component or the prejudice component, the court need not address the other component. *Id.* at 470. On review, the motion court's denial of Rule 29.15 motion is limited to a determination of whether the findings, conclusions, and judgment are clearly erroneous. Rule 29.15(j); *Brummell v. State,* 770 S.W.2d 379, 380 (Mo.App.1989).

In his third point, appellant claims that trial counsel failed to perform as a reasonably competent attorney would have under the same or similar circumstances because she failed to object when the state used one of its peremptory strikes against a black venireperson and thus failed to preserve the *Batson* issue for appeal.

▆▆ Initially, we note that the *Strickland* standard applies because the focus of our inquiry is on ineffective assistance of counsel and not whether the state exercised its peremptory strike for a racially discriminatory purpose. *Felton v. State,* 753 S.W.2d 34, 35[4] (Mo.App.1988). Further, we observe that ineffective assistance of counsel is measured against the backdrop of the law at the time of trial and cannot be based on counsel's failure to anticipate changes in the law. *Id.* at 35[2, 3]. Consequently, we shall briefly summarize the development of the law concerning equal protection and peremptory strikes up to the defendant's trial on July 15 and 16, 1991.

In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the court held that a defendant may establish a prima facie case of purposeful discrimination in selection of the jury by showing that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove members of defendant's race from the venire. *Id.* at 476 U.S. 96, at 106 S.Ct. 1723. The Court stated that in deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. *Id.* In *State v. Antwine,* 743 S.W.2d 51 (Mo. banc 1987), our Supreme Court addressed the task of providing guidance to our trial courts when determining *Batson* issues, holding that when faced with a *Batson* issue, trial courts must assess the validity of the prose-

cutor's explanation, consider the entire milieu of voir dire, and focus upon all the information and intuitive perceptions gathered by the judge. *Id.* at 63–6[12–17]. Subsequently, we held in *State v. Crump,* 747 S.W.2d 193 (Mo.App.1988) that according to *Batson,* the fact that blacks remain on the venire panel after the prosecutor used her peremptory challenges undercuts any inference of discrimination. *Id.* at 196[6]. Our Supreme Court took a similar approach in *State v. Griffin,* 756 S.W.2d 475 (Mo. banc 1988). The Court held that if a prosecutor does not exercise all his peremptory challenges to remove blacks from the venire, this fact undercuts any inference of impermissible discrimination. In *State v. Burgess,* 800 S.W.2d 743 (Mo. banc 1990), our Supreme Court ruled that the presence of blacks on the jury also undercuts any inference of racial discrimination. *Id.* at 747[9].

The U.S. Supreme Court significantly expanded the scope of *Batson* in *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). In *Powers,* the Court held that defendant's race is irrelevant to his standing to object to the discriminatory use of peremptory challenges as violative of the equal protection clause. *Id.* at 499 U.S. 415, at 111 S.Ct. 1373[6]. In *State v. Robinson,* 811 S.W.2d 460 (Mo.App.1991), we held that many factors are still valid after *Powers* which may be used to indicate a lack of discriminatory intent in the State's peremptory strikes, including the failure of the State to use all peremptory strikes to remove blacks from the venire, and the percentage of strikes used on blacks as compared to the percentage of blacks on the venire. *Id.* at 463. In *State v. Ivory,* 813 S.W.2d 102 (Mo. App.1991), we ruled that under *Powers* and *Antwine,* the trial court may look at several factors including, but not limited to, the racial make up of the jury that decided the case and whether all the State's peremptory challenges were used to strike members of the same race. *Id.* at 104[1–3].

■ We note that after appellant's trial, our Supreme Court invalidated the practice of placing decisive reliance upon the state's failure to use all of its strikes to remove black venirepersons or the presence of blacks on the venire panel in *State v. Parker,* 836 S.W.2d 930 (Mo. banc 1992), cert. denied, —— U.S. ——, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992). The removal of even one black person from the venire for racial reasons constitutes a violation of the equal protection clause regardless of the racial composition of the selected jury. *Id.* at 940[15]. The presence of blacks on the jury and the state's failure to use all of its strikes against blacks no longer undercuts any inference of discrimination. *Id.*

Appellant points out that the record indicates trial counsel waived preserving the *Batson* issue because three blacks remained on the venire panel. Appellant argues that a reasonable attorney under the circumstances would have made a *Batson* objection because: appellant was black; the victim and all the state's witnesses were white; venireperson Calomese was qualified to act as a juror and he was one of only four blacks on the venire panel. Appellant concludes that counsel's failure to make an appropriate and timely objection prejudiced him because appellant's equal protection right to a jury selected in a nondiscriminatory manner was violated.

■ At the time of appellant's trial, the law in Missouri was that counsel could consider the composition of the venire and the State's use of its peremptory strikes in deciding whether to make a *Batson* objection. Given that trial counsel waived the *Batson* issue because the state removed one black venireperson which left three blacks on the panel, counsel's failure to object did not constitute deficient performance.

In addition, counsel based her decision to waive the *Batson* issue on other factors besides the State's use of its peremptory strikes and the composition of the remaining venire panel. The record on appeal shows that trial counsel had tried twenty-six felony cases. She testified that she remembered venireperson Calomese behaved oddly while testifying. At the post-conviction hearing, she stated that she probably did not object based on her trial experience, venireperson Calomese's testimony, and her perception of his behavior. Thus, the motion court's finding that trial counsel acted reasonably was not clearly erroneous. Point denied.

■ In his fourth and final point, appellant claims the motion court erred in overruling his claim that trial counsel failed to perform as a reasonably competent attorney under the circumstances because she failed to request the court to allow her to introduce expert testimony on eyewitness identification. Appellant contends that his expert should have been allowed to testify on the issues of cross-racial identification, over-estimation of the duration of the crime, the noncorrelation between witness confidence and accuracy of the identification, and the prejudicial photographic lineup where appellant was identified.

■ The admissibility of testimony is within the discretion of the trial court, and we will not overturn its decision unless there is a showing of an abuse of discretion. *State v. Jordan*, 751 S.W.2d 68, 77–8[12] (Mo.App. 1988). Expert testimony is admissible only if the jury is incapable of drawing from their own experience or knowledge correct conclusions from the facts. *State v. Taylor*, 663 S.W.2d 235, 239[1] (Mo. banc 1984). Our Supreme Court addressed the issue of the admissibility of expert testimony on eyewitness identification in *State v. Lawhorn*, 762 S.W.2d 820 (Mo. banc 1988), concluding that the trial court did not abuse its discretion in prohibiting such testimony. *Id.* at 823[2–4]. The Court reasoned that there is no abuse of discretion if a defendant has an opportunity to inform the jury about the problems of eyewitness identification through cross-examination of the eyewitnesses and closing argument. *Id.* In *State v. Whitmill*, 780 S.W.2d 45 (Mo. banc 1989), the Court again upheld the exclusion of expert testimony on eyewitness identification. *Id.* at 47[2]. The Court explained that the defendant had adequate opportunity to apprise the jury of the difficulties in eyewitness identification through opening statement, cross-examination of the eyewitness, and closing argument. In addition, the Court noted that the trial court had instructed the jury on the reliability of identification in MAI–CR3d 302.1. *Id.* We recently addressed such expert testimony in *State v. Hill*, 854 S.W.2d 486 (Mo.App.1993). In *Hill*, defendant contested the exclusion of expert testimony on eyewitness identification for the purpose of explaining to the jury the problems with cross-racial identification and overestimation of time by the eyewitness. *Id.* at 487. We held the trial court did not err in excluding the testimony because the defendant had discussed the problems in the opening and closing statements, and had fully cross-examined the witnesses. *Id.* at 488[5]. Further, we noted that the trial court had instructed the jury on the reliability of eyewitness identification with MAI–CR3d 302.-01. *Id.*

Here, the record indicates that trial counsel fully cross-examined victim, the sole eyewitness, and described the difficulties of eyewitness identification in closing argument. Moreover, the trial court instructed the jury on the reliability of identification with MAI–CR3d 302.01. In addition, at the post-conviction hearing, the expert testified on cross-examination that he had conducted no tests on victim and that he had no independent way of calculating victim's responses. Based on this evidence, the motion court found that the expert's testimony had no probative value on any issue in the case and would have invaded the province of the jury on the issue of victim's credibility. The court further found that even if trial counsel had attempted to offer such testimony, the trial court would have excluded it. This finding is consistent with the decisions in *Lawhorn*, *Whitmill*, and *Hill*. Thus, we hold that the motion court's findings and conclusion that counsel acted reasonably were not clearly erroneous. Point denied.

Judgments affirmed.

STEPHEN and PUDLOWSKI, JJ., concur.