

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED109927 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | 19SL-CR01596-01 |
| | ) | |
| HAVERLEY BRACY, | ) | Honorable Brian H. May |
| | ) | |
| Appellant. | ) | Filed: April 25, 2023 |

Kelly C. Broniec, P.J., Philip M. Hess, J., and James M. Dowd, J.

## OPINION

Appellant Haverley Bracy appeals the judgment entered upon a jury verdict in the Circuit Court of St. Louis County convicting him of four counts of the class C felony of first-degree child molestation, three counts of the unclassified felony of first-degree statutory sodomy, and one count of the unclassified felony of attempted first-degree statutory sodomy. In ten points on appeal, Bracy argues that the trial court (1) plainly erred in accepting the guilty verdicts for Counts I and VIII, both relating to first-degree child molestation, because the information for both counts did not allege with sufficient specificity the "sexual contact" element of the offense, prejudicing his ability to prepare a defense; (2) erred in denying his motion for judgment of acquittal on Counts I and VII because there was insufficient evidence from which the jury could have found him guilty of the offenses beyond a reasonable doubt; (3) plainly erred in submitting

the verdict directors for Counts I and VII as a result of the insufficient evidence; (4) plainly erred in admitting the recorded forensic interviews of two child victims under section 492.304[1] without a Chapter 491[2] hearing as to the reliability of the statements made during the interviews; and (5) plainly erred in submitting the verdict directors for Counts VII and VIII because the instructions failed to specify the particular criminal act being charged in each count in violation of *State v. Celis-Garcia*, 344 S.W.3d 150 (Mo. banc 2011), which addresses juror unanimity in multiple criminal acts cases. We affirm.

## Background

On June 14, 2021, Bracy was charged by information with four counts of the class C felony of first-degree child molestation of victims L.B., Y.S., M.M., and S.T. (Counts I, III, V, and VIII), three counts of the unclassified felony of first-degree statutory sodomy of Y.S., M.M., and S.T. (Counts II, IV, and VI), and one count of the unclassified felony of attempted first-degree statutory sodomy of S.T. (Count VII). All four victims testified at Bracy's jury trial on June 16, 2021.

L.B. was born in 1991 and is Bracy's biological daughter. At trial, she testified to numerous sexual encounters with Bracy that occurred between 1998 and 2000. L.B. recalled one incident in which she woke up to Bracy "right there touching on [her] — on [her] private area," meaning her vagina, while her underwear was still on. She recounted another incident in which Bracy "climbed on top of [her]" in his clothing and began "grinding . . . [their] pelvic areas

---

[1] All statutory references are to the Revised Statutes of Missouri (2016) unless otherwise indicated.

[2] Section 491.075 requires a hearing held outside the presence of the jury to determine whether the out-of-court statements of a child, relating to "an offense under chapter 565, 566, 568 or 573," have "sufficient indicia of reliability" prior to the introduction of those statements into evidence, if the statements are being offered as substantive evidence to prove the truth of the matter asserted.

together." L.B. also testified that her first oral sex experience was with Bracy. When the defense asked whether Bracy was "mainly touching [her] outside of [her] clothes" during these incidents, L.B. responded, "Except for the time when he was giving me oral sex."

S.T. was born in 1989 and saw Bracy, who is her half-brother's father, as a father-like figure. As a child, she occasionally visited Bracy's home and played with L.B. Like L.B., S.T. testified to several incidents between 1998 and 2000 in which Bracy touched her sexually. She recounted that during a slumber party for L.B., Bracy locked the young girls in a basement room with him and, as they tried to escape, touched, grabbed, and rubbed on them. S.T. remembers that Bracy touched her between her legs, over her clothing. S.T. also testified to an incident in the pool at Bracy's home in which Bracy repeatedly slid his hand underneath S.T.'s swimsuit, making skin-to-skin contact by placing "his hand in [her] private part," meaning her vagina, while he tossed her into the water. She stated that, even at that time, the touching felt intentional and inappropriate. During another incident, S.T. recalled sleeping on the bottom of a bunk bed at Bracy's home and waking to Bracy's hands "up under [her] night gown," touching her over her "panties." He stopped touching her only after she scrambled to the top bunk with L.B. A few years later, around 2004, S.T. fell asleep at Bracy's new home on Church Street and awoke to Bracy on the end of the bed "touching [her] vagina and rubbing [her] butt" over her clothes.

Y.S. was born in 1999 and her sister, Marquita Mixon, shares two children with Bracy. In February 2010, when Y.S. was eight years old, she spent the night at Bracy's home with her sister, her niece, and her nephews. As everyone slept, Bracy moved Y.S. into the bedroom with him and began touching her underneath her clothes. In the morning, Y.S. typed a message on her personal laptop and showed it to Mixon, informing her sister that Bracy touched her "on her private area" and that she wanted to leave. At home, Y.S. told her mother that Bracy had rubbed

3

her "va-jay-jay," meaning her vagina. Two days later, Y.S. was interviewed at the Child Advocacy Center by forensic interview specialist Beverly Tucker. During the interview, Y.S. told Tucker that Bracy's finger felt uncomfortable in her "p-gina," again meaning her vagina. The forensic interview of Y.S. was recorded and the recording was submitted into evidence at trial. Y.S. also took the stand and testified that she awoke that night to Bracy "grabbing [her] boobs, making [her] grab his penis, and him just rubbing [her]."

M.M. was born in 2004 and is Bracy's biological son. Mixon is his mother. Just days after Y.S. reported being touched by Bracy, M.M. informed his mother that he had experienced similar touching, which is estimated to have taken place between August 2009 and February 2010 when M.M. was five years old. Like Y.S., M.M. was interviewed at the Child Advocacy Center, this time by forensic interview specialist Megan Marietta. In his interview, M.M. told Marietta that Bracy had him sing Twinkle, Twinkle, Little Star while Bracy placed his "privates," meaning his penis, on M.M.'s "booty." M.M. identified the penis of the anatomy doll as "nuts," and told Marietta that Bracy's "nuts" touched his "nuts," and that it hurt him. M.M.'s interview was recorded and later submitted into evidence at Bracy's trial. M.M. testified at the trial but was unable to recall the offenses at that time. He was then seventeen years old.

Both Tucker and Marietta of the Child Advocacy Center testified at trial regarding the substance of these interviews and the procedures followed.

The jury found Bracy guilty on all eight counts. On August 5, 2021, Bracy was sentenced as a predatory sex offender to eight consecutive life terms in the Missouri Department of Corrections and this appeal follows.

4

## Discussion

For ease of analysis of Bracy's ten points on appeal, we address together Points I and VIII; Points II, III, VI, and IX; Points IV and V; and finally Points VII and X.

### *Points I and VIII*

In Point I, Bracy claims that the trial court plainly erred in accepting the guilty verdict on Count I, first-degree child molestation of L.B., because the information charging him was insufficient in that it did not identify the "specific behavior" constituting the "sexual contact" element of the offense. In Point VIII, Bracy argues that the information charging him with Count VIII, first-degree child molestation of S.T., was similarly defective. In both points, Bracy alleges that the lack of specificity in the information prejudiced his substantial rights to prepare a defense or plead former jeopardy in case of an acquittal.

Because Bracy did not object to the sufficiency of the information for Counts I and VIII as required by Rule 24.04(b)(2), he requests plain error review. Under Rule 30.20, plain errors affecting substantial rights may be considered at our discretion. However, "[w]e use the rule sparingly and limit its application to those cases where there is a clear, strong demonstration of manifest injustice or miscarriage of justice." *State v. Collis*, 849 S.W.2d 660, 663 (Mo. App. W.D. 1993). Such is not the case here. While we conclude that plain error review is unwarranted here, we explain, *ex gratia*, why.

"An information . . . must contain all essential elements of an offense charged as set out in the statute, and must clearly apprise defendant of the facts constituting the offense." *State v. Cunningham*, 863 S.W.2d 914, 919 (Mo. App. E.D. 1993). If the information is insufficient to "advise [the defendant] of the conduct by which the offense was allegedly committed," then the defendant may file a motion for a bill of particulars requesting additional facts about the offense

5

such that the defendant can prepare for trial. *State v. Williams*, 126 S.W.3d 377, 383 (Mo. banc 2004); Rule 23.04. The "[f]ailure to file a motion for a bill of particulars waives the right to later complain of lack of detail in the information, provided the alleged lack of detail does not render the information wholly insufficient." *State v. Fults*, 719 S.W.2d 46, 50 (Mo. App. E.D. 1986); Rule 24.04(b)(2).

Moreover, when the sufficiency of the information is raised for the first time after verdict, a defendant is entitled to relief only if he can demonstrate "actual prejudice," which occurs "only if the . . . information was so deficient that the defendant was not placed on notice as to what crime he was being charged with, or was so lacking in clarity that the defendant was unable to properly prepare a defense." *State v. Baker*, 103 S.W.3d 711, 722 (Mo. banc 2003) (internal quotation omitted).

"An information that specifically cites the section of the criminal code alleged to be violated places a defendant on notice of the offense charged." *State v. Chavez*, 165 S.W.3d 545, 548 (Mo. App. E.D. 2005). In *State v. Long*, the defendant was charged with sexually molesting his ten-year-old daughter by the following information: "[T]he defendant . . . in violation of Section 566.067, RSMo, committed the class C felony of child molestation in the first degree punishable upon conviction under Sections 558.011 and 560.011, RSMo, in that on or about December 24, 1995, in the County of Platte, State of Missouri, the defendant subjected [his daughter] who was then less than twelve years old to sexual contact." 972 S.W.2d 559, 561 (Mo. App. W.D. 1998). Following his conviction for this charge, the defendant argued that the information "did not aver enough facts to inform him adequately of the cause and nature of the charges against him and that it did not allege the elements of the statute's definition of 'sexual contact.'" *Id.* The Court found that the information was adequate because "[i]t charged the

6

offense in the language of the statute and recited all of the elements set out in the statute," and that this was "sufficient to apprise [the defendant] of the facts constituting the crime charged and to allow him to prepare an adequate defense." *Id.*

Turning now to the facts in this case, Bracy's failure to move for a bill of particulars for Counts I and VIII is fatal to his argument. If Bracy was unable to discern which incidents of hand-to-genital contact formed the basis for these charges, his remedy under Rule 23.04 was to request a more specific statement of the supporting facts via a bill of particulars. He did not do so. Because no bill of particulars was filed, we presume that Bracy "was satisfied with the content of the information." *Cunningham*, 863 S.W.2d at 919. We further find that, as a result, he waived any challenge on appeal to the sufficiency of the information for either count. *Id.*

Moreover, this case cannot be meaningfully distinguished from *Long*. The information for both Count I and Count VIII are virtually indistinguishable from the information in *Long*: "[Bracy], in violation of Section 566.067, RSMo, committed the class C felony of child molestation in the first degree punishable upon conviction under Sections 558.011 and 560.11, RSMo, in that on or between January 1, 1998 and September 30, 2000, in the County of St. Louis, State of Missouri, the defendant subjected [L.B. or S.T.], who was then less than twelve years old to sexual contact."

Thus, as in *Long*, the information for Counts I and VIII was sufficient to apprise Bracy of the charged offense because it specifically cited the statute alleged to be violated, Section 566.067, and recited each of the elements set out in that statute. This was enough to place him on notice of the defense charged and allow him to prepare an adequate defense. *See Long*, 972 S.W.2d at 561. Thus, the trial court did not err, plainly or otherwise, in accepting the jury's guilty verdict for Counts I and VIII. Points I and VIII are denied.

7

*Points II and III*

In Point II, Bracy claims that the trial court erred in denying his motion for judgment of acquittal on Count I because the State failed to prove beyond a reasonable doubt every element of the charged offense. Specifically, Bracy asserts that he cannot be found guilty of first-degree child molestation because the State failed to prove that Bracy touched L.B. *underneath* her clothing, which was required to satisfy the "sexual contact" element at the time of the offense. Relatedly, in Point III, Bracy argues that because the State failed to adequately prove every element of Count I, the trial court plainly erred in submitting Instruction No. 7, the verdict director for Count I. We disagree as to both Points.

When reviewing sufficiency of the evidence claims, we decide whether any rational fact finder could have found the defendant guilty of the essential elements of the offense beyond a reasonable doubt. *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011). This is not an assessment of whether we believe that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Id.* We accept as true all evidence and inferences in the light most favorable to the verdict and disregard all contrary evidence and inferences. *Id.* In reviewing the sufficiency of the evidence, we will neither act as a "super juror" with veto powers nor will we reweigh the evidence. *Id.* Instead, we give great deference to the fact finder, who may believe all, some, or none of the testimony of a witness when considered against the background of all the other facts, circumstances, and evidence in the case. *Id.* "However, we will not supply missing evidence or give the State the benefit of unreasonable, speculative, or forced inferences." *McAllister v. State*, 643 S.W.3d 124, 132 (Mo. App. E.D.

8

2022) (internal quotation omitted). Additionally, the inferences must be logical, reasonable, and drawn from established fact. *Id.*

Circumstantial evidence of a fact is sufficient to support a verdict. *State v. Grim*, 854 S.W.2d 403, 406 (Mo. banc 1993). "If circumstantial evidence supports equally valid inferences, it is up to the fact finder to determine which inference to believe," as the fact finder is permitted to draw such reasonable inferences from the evidence as the evidence will permit. *State v. Dillbeck*, 654 S.W.3d 393, 401 (Mo. App. S.D. 2022) (quoting *State v. Hineman*, 14 S.W.3d 924, 927 (Mo. banc 1999)).

At the time of the offense charged in Count I, a person committed first-degree child molestation "if he subject[ed] another person who [was] less than twelve years of age to sexual contact." Section 566.067 (Cum. Supp. 1996). "Sexual contact" was at that time defined as "[a]ny touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, for the purpose of arousing or gratifying the desire of any person." Section 566.010 (1995). It did not include touching *through* the clothing until 2002. *State v. Miller*, 372 S.W.3d 455, 471 (Mo. banc 2012). Thus, "[w]hen a defendant challenges the sufficiency of the evidence to support a finding that sexual contact occurred, the issue is whether there is at least a reasonable inference that there was the touching of the genitals." *State v. Greenlee*, 327 S.W.3d 602, 619 (Mo. App. E.D. 2010).

Turning now to the facts in this case, the jury could reasonably infer from L.B.'s testimony that her father was touching her "on" her private parts meant that Bracy was making skin-to-skin contact with her vagina *underneath* her clothes. "The fact that there may be a second reasonable inference—distinct from one supporting guilt—does not negate the existing inference supporting guilt," and, moreover, "our standard of review mandates that we disregard

9

all inferences contrary to the verdict." *State v. Leonard*, 490 S.W.3d 730, 738 (Mo. App. W.D. 2016). So, although the evidence may also support an inference that Bracy touched L.B. *through* her underwear, it does not negate the evidence, including that Bracy touched S.T. underneath her swimsuit while she was wearing it, or prevent a reasonable juror from inferring beyond a reasonable doubt that Bracy committed the offense charged.

Accepting the State's evidence against Bracy as true, and drawing all reasonable inferences in favor of guilt, we find that the State presented sufficient circumstantial evidence from which the jury could reasonably infer that Bracy made skin-to-skin contact with L.B.'s vagina underneath her clothes. Therefore, the trial court did not err in denying Bracy's motion for judgment of acquittal. Point II is denied.

As to Point III, it follows from the foregoing that the verdict director for Count I, Instruction No. 7, was not at variance with the evidence presented to support the offense. *See State v. Rachel*, 507 S.W.3d 81, 87 (Mo. App. E.D. 2016). Instruction No. 7 required the jury to find that "on or between January 1, 1998 and September 30, 2000 . . . the defendant touched the genitals of L.B." Because the jury could have made a reasonable inference from the evidence presented that Bracy touched L.B.'s vagina underneath her underwear, the trial court did not plainly err in submitting the verdict director for first-degree child molestation. Point III is denied.

### Points VI and IX

In Point VI, Bracy claims that the trial court erred in denying his motion for judgment of acquittal on Count VII because there was insufficient evidence to support a conviction of first-degree attempted statutory sodomy in that a reasonable jury could not have found beyond a reasonable doubt that Bracy attempted to place his hand in the underwear of S.T. In Point IX,

10

Bracy argues that because of the State's failure to prove the attempt element of the offense, the trial court plainly erred in submitting Instruction No. 16, the verdict director for Count VII. We disagree.[3]

At the time of the offense charged in Count VII, a person committed first-degree statutory sodomy if he "ha[d] deviate sexual intercourse with another person who [was] less than fourteen years old." Section 566.062.1 (1995). "Deviate sexual intercourse" was defined as "any act involving the genitals of one person and the mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person." Section 566.010(10) (1995). A person is guilty of the *attempt* to commit such an offense if (1) with the purpose of committing the offense (2) he takes a substantial step towards the commission of the offense. Section 564.011 (2016). A "substantial step" is "conduct strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." *Id.*

That a reasonable jury on this record could have found beyond a reasonable doubt that Bracy attempted to place his hand in the underwear of S.T. finds support in Missouri law. In *State v. Bonich*, the defendant was found guilty of attempted first-degree statutory sodomy after his victim awoke "to find that her pants were off" and that the defendant's hand was "on her vagina on the outside of her underwear." 289 S.W.3d 767 (Mo. App. S.D. 2009). In affirming the conviction, the Court reasoned that "it is a fair inference that [the defendant] would have continued to pursue his purpose" in some manner if the victim had not awoken, and that the defendant's actions "were strongly corroborative of the firmness of his purpose to commit"

---

[3] The same standard of review is applicable to Points VI and IX as was employed in our analysis of Points II and III.

sodomy. *Id.* The fact that the victim awoke to the defendant's hand inside her pants but outside her underwear was sufficient evidence to support a conviction of attempted first-degree statutory sodomy. *Id.*

Thus, there was sufficient evidence here to convict Bracy of attempted first-degree statutory sodomy of S.T., because S.T. awoke to find that Bracy's hand was underneath her nightgown and on top of her "panties." As in *Bonich*, the jury could reasonably infer that, had S.T. not awoken and scrambled to the top bunk with L.B., Bracy would have continued in his purpose to commit sodomy, an inference strongly corroborated not only by his actions that night, but from earlier evidence that Bracy had at another time placed his hand inside S.T.'s swimsuit and made skin-to-skin contact with her vagina. As discussed in Point II, the jury is permitted to draw such reasonable inferences from the evidence as the evidence will permit. *Bonich*, 289 S.W.3d at 772. Furthermore, this comports with our standard of review, which requires us to view the evidence and inferences therefrom "in the light most favorable to the verdict." *State v. Vandevere*, 175 S.W.3d 107, 108 (Mo. banc 2005). Therefore, the trial court did not err in denying Bracy's motion for judgment of acquittal for Count VII. Point VI is denied.

Turning to Point IX, we likewise reject Bracy's challenge to Instruction No. 16, the verdict director for Count VII, which submitted to the jury the attempted first-degree statutory sodomy charge. Because the jury could have made a reasonable inference from the evidence presented that Bracy attempted to place his hand inside S.T.'s underwear while she slept, which is a substantial step in the commission of statutory sodomy, the trial court did not plainly err in submitting the verdict director for attempted first-degree statutory sodomy. Point IX is denied.

12

*Points IV and V*

In Points IV and V, Bracy claims that the trial court plainly erred in admitting the forensic interviews of Y.S. and M.M. because the court failed to make the reliability determinations required by section 491.075 regarding the out-of-court statements in the recordings prior to their submission into evidence. Bracy argues the recorded statements were inadmissible hearsay and their admission into evidence resulted in manifest injustice. We disagree because the forensic interviews of Y.S. and M.M. were properly admitted into evidence under section 492.304.1 and met all requirements necessary for their submission under that statute which does not require a section 491.075 reliability determination. Furthermore, any need for a section 491.075 reliability hearing was negated when both Y.S. and M.M. testified at trial.

As discussed in Point I, we perform plain error review at our discretion and its application is limited to cases where there is a clear, strong demonstration of manifest injustice. *Collis*, 849 S.W.2d at 663. Although it is manifest that no plain error occurred here, or error of any kind, we again explain *ex gratia* why Bracy's Points IV and V fail.

Under section 492.304, "the visual and aural recording of a verbal or nonverbal statement of a child when under the age of fourteen who is alleged to be a victim of an offense under the provisions of chapter 565, 566, or 568 is admissible into evidence" if certain enumerated conditions are satisfied.[4] It is undisputed that all seven conditions were satisfied in this case.

---

[4] Those conditions are (1) that no attorney for either party was present when the statement was made; (2) that the recording is both visual and aural and is recorded on film or videotape or by other electronic means; (3) that the recording equipment was capable of making an accurate recording, the operator of the equipment was competent, and the recording is accurate and has not been altered; (4) that the statement was not made in response to questioning calculated to lead the child to make a particular statement or to act in a particular way; (5) that every voice on the recording is identified; (6) that the person conducting the interview of the child in the

Nevertheless, Bracy would have us impose another on trial courts—a section 491.075 reliability determination as well. But section 492.304.2 only requires a section 491.075 reliability hearing and determination in cases where "the child does not testify at the proceeding." Such was not the case here—both Y.S. and M.M. testified at trial, as did their forensic interviewers.

Bracy's argument would also require that we employ section 491.075 in a manner strictly prohibited by the legislature. Section 491.075.4 states that: "Nothing in [section 491.075] shall be construed to limit the admissibility of statements, admissions or confessions otherwise admissible by law." *See State v. James*, 605 S.W.3d 132, 135 (Mo. App. S.D. 2020). As 492.304 pertains to the admissibility of recorded forensic interviews, section 491.075 may not be used to restrict such admissibility as Bracy proposes.

Points IV and V are denied.

*Points VII and X*

Bracy argues in Points VII and X that the trial court plainly erred in submitting Instructions Nos. 16 and 17, the verdict directors for Count VII, attempted first-degree statutory sodomy of S.T., and Count VIII, first-degree child molestation of S.T., because the instructions failed to specify particular and identifiable incidents of hand-to-genital contact, such that the jurors were not required to reach a unanimous guilty verdict for the same incident on each count. *Celis-Garcia*, 344 S.W.3d at 158. Because he did not object to the verdict directors and therefore failed to preserve for appellate review his claimed errors in Points VII and X, Bracy requests plain error review.[5]

_____

recording is present at the proceeding and available to testify or be cross-examined by either party; and (7) that the defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence. Section 492.304.1

[5] As discussed, review for plain error is discretionary. Rule 30.20; *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020). "[T]he defendant bears the burden of demonstrating

14

The verdict in a criminal jury trial must be unanimous. Rule 29.01(a). Juror unanimity is often implicated in multiple-acts cases. A multiple-acts case arises when evidence is presented of multiple, distinct criminal acts, each of which could serve as the basis for the criminal charge, but the defendant is charged with a single count. *Celis-Garcia*, 344 S.W.3d at 155-56. In a multiple-acts case, a defendant's right to a unanimous verdict is violated if it is not possible to determine whether the jury unanimously agreed on any one of separate acts in evidence that would support conviction of the charged offense. *Id.* at 158. "[A] defendant's right to a unanimous verdict would be protected in a multiple acts case by either the state (1) electing the particular criminal act on which it will rely to support the charge or (2) the verdict director specifically describing the separate criminal acts presented to the jury and the jury being instructed that it must agree unanimously that at least one of those acts occurred." *Id.* at 157.

We conclude that the verdict directors here satisfied the principles set in *Celis-Garcia* for unanimous verdicts. In relevant part, Instruction No. 16, the verdict director for Count VII, instructed the jury to find Bracy guilty if it found beyond a reasonable doubt "that on or between January 1, 1998 and September 30, 2000 . . . the defendant tried to place his hand in the underwear of S.T." Instruction No. 17, the verdict director for Count VIII, instructed the jury to find Bracy guilty if it found beyond a reasonable doubt "that on or between January 1, 1998 and September 30, 2000 . . . the defendant touched the genitals of S.T."

While the instructions as written might allow the jury to convict Bracy of Counts VII and VIII based upon evidence of numerous acts, we find the State's closing argument specifically

manifest injustice entitling him to" plain error review. *State v. Oates*, 540 S.W.3d 858, 863 (Mo. banc 2018) (quoting *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006)). Unless manifest injustice or a miscarriage of justice is established, an appellate court should "decline to review for plain error under Rule 30.20." *Brandolese*, 601 S.W.3d at 526. (quoting *State v. Jones*, 427 S.W.3d 191, 196 (Mo. banc 2014)).

directed the jury to the particular criminal act on which it relied to convict on each charge, which precludes a finding of manifest injustice. *State v. Henry*, 568 S.W.3d 464, 473 (Mo. App. E.D. 2019) (finding the state adequately accentuated the individual characteristics of the differing incidents of abuse in closing to prevent manifest injustice).

As to Count VII, for attempted first-degree statutory sodomy of S.T., the State instructed the jury in closing argument: "So, this attempt here for Count VII is the one you guys will consider . . . In here we are talking about the time when [S.T.] was in that bunk bed. When she was in the bunk bed and she said she was woken up to the defendant putting his hand — he was touching on her. And then he put his hand underneath her [nightgown] and was going underneath her underwear. Going underneath, he didn't get there yet. But he was trying. And then she got out of the bed and crawled up into the top bunk with her friend, [L.B.]."

As to Count VIII, for first-degree child molestation of S.T., the State told the jury during closing: "We're down to the eighth count. This is the last one with [S.T.] This one involves the slumber party. You remember she talked about how they were having some friends over, celebrating [L.B.'s] birthday, and they were playing hide-and-seek in the basement. The defendant came down and moved them into a room; locked them in that room . . . And he came up and touched [his] hands between her legs over the clothing. This is a child molestation count."

Because the State specifically directed the jury to the particular criminal act in the evidence on which it relied to support each charge, this record leaves little doubt that the verdicts on Counts VII and VIII were unanimous. Points VII and X are denied.

16

## Conclusion

For the reasons stated above, the judgment is affirmed.

_____
James M. Dowd, Judge

Kelly C. Broniec, P.J., and
Philip M. Hess, J. concur.

17