Julie McELHINEY, Appellant,

v.

Paul MOSSMAN, et al., Respondents.

No. 61161.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 30, 1993.

G. William Wynne, Coggan R. Mills, Clayton, for appellant.

Richard P. Dorsey, Reginald P. Bodeux, Maryella Kelly, Timothy R. Huff, Niedner Ahlheim, Bodeux & Dorsey, St. Charles, Mark Burns, Burns, Marshall & Burns, Clayton, for respondents.

SMITH, Judge.

Julie McElhiney appeals from a jury verdict determining her to be the driver of an automobile involved in a one car accident which resulted in the death of Paul Mossman and paralyzing injuries to her. We affirm.

Mossman's parents brought a wrongful death action against McElhiney. McElhiney brought a suit for personal injuries against the defendant ad litem for Paul Mossman. The actions were consolidated for trial. The only issue presented to the jury was which of the two, Mossman or McElhiney, was the driver of the automobile. The jury returned a unanimous special verdict finding McElhiney to be the driver.

The accident occurred early in the morning on Hackman Road in the City of St. Charles. The automobile speed was estimated by McElhiney's expert as between 50 and 71 mph., in any case above the speed limit. At the time of the accident the car climbed an embankment, became airborne, rotated clockwise 180°, and crashed roof down into a tree. Mossman died in the accident and McElhiney was paralyzed. All witnesses at the scene placed McElhiney's body in the driver's portion of the 1981 Toyota Corolla which was her car. Several witnesses testified that her left hand was pinned between the steering wheel and the roof of the vehicle and some witnesses testified that her feet were entangled in the pedals. All witnesses at the scene testified that Mossman's body was in the front passenger compartment of the vehicle. Mossman had a blood alcohol content of .17%; McElhiney's blood alcohol content was .107%. In response to a question in the hospital by a police officer of whether she was driving the car at the time of the accident McElhiney responded "yes".

McElhiney testified that she and Mossman left a bar in her automobile with Mossman driving. She fell asleep as they were leaving the parking lot and remembers nothing further prior to the hospital. McElhiney presented expert testimony by Francis Oldham, a mechanical engineer, that in his opinion while the vehicle was airborne the shell of the vehicle rotated around the occupants causing them in effect to exchange places. He stated that if, in fact, McElhiney's feet were entangled in the pedals that would be inconsistent with his opinion. McElhiney also produced the testimony of Dr. Mary Case, a pathologist, who expressed the opinion that based upon his injuries Mossman was the driver of the vehicle. In the death certificate of Mossman, signed by Dr. Case, she identified Mossman as the passenger in the automobile.

McElhiney raises six claims of error. The first posits error by the trial court in permitting a police officer to testify to the statement made by McElhiney in the hospital that she was driving. McElhiney contends that the statement was made shortly after her arrival at the hospital while she was in a condition where she could not understand a question or formulate an answer which could be relied upon. In Missouri an admission against interest is admissible unless it is shown that due to the circumstances under which the statement was made "the person giving it was under such a mental state that he was unable to narrate facts and events in a way to be relied on; ..." *Deffendoll v. Stupp Brothers Bridge & Iron Co.*, 415 S.W.2d 36 (Mo.App.1967) [1-3]. Whether or not the admission should be excluded on such grounds is a matter of discretion for the

trial court. *Id.* The emergency room doctor testified at trial that he did not believe that at the time the question was asked McElhiney was capable of giving a knowledgeable response. This was because of her pain. The question was posed to her approximately two hours after discovery of the accident. She was at that time capable of telling the doctor where she was hurting. The police officer was given permission by the doctor to ask her the question after the officer had been required to wait for approximately thirty minutes after requesting permission of the doctor. It is a reasonable inference that at that time the doctor believed she was capable of understanding and answering the single simple question the officer proposed to ask. The police officer testified that at the time she gave the answer he had no difficulty understanding the answer and that she looked at him when he talked to her. We find no abuse of discretion in the trial court's ruling. It is for the jury to determine the weight and value to be given to the admission in light of the conflicting evidence of McElhiney's capacity. *Brunswick Corporation v. Briscoe,* 523 S.W.2d 115 (Mo.App. 1975) [5–12].

█ McElhiney next premises error on the trial court's refusal to allow the emergency room physician who treated McElhiney to testify "to the significance of the chest injuries to the deceased Paul Mossman as well as to the significance of the absence of chest injuries to appellant" in determining which of the two was the driver. Objection was made that no foundation was laid, that the doctor was qualified to testify as an emergency room doctor treating injuries but not qualified to correlate the injuries to an automobile accident, and that the testimony was based on hearsay and was speculative. The trial court has considerable discretion in determining the qualifications of an expert witness. *Pfeffer v. Kerr,* 693 S.W.2d 296 (Mo.App.1985) [5, 6]. Its ruling will not be disturbed without a showing of an abuse of that discretion. *Id.* This is true even when the medical opinion is that of a practicing physician. *Id.*

█ The offer of proof did not ask the doctor for his opinion of which occupant of the vehicle was the driver and which the passenger. Rather he testified that certain types of injury would more usually occur to a passenger than to a driver but did not eliminate such injuries occurring to either occupant. The same was true of types of injury more normally sustained by a driver than a passenger. The doctor did not attempt to give an opinion within reasonable medical certainty of anything. Inasmuch as the injuries which the occupants sustained could have occurred regardless of which position they occupied in the vehicle the doctor's testimony provided no real assistance to the jury in resolving the issue before it. We find no abuse of the trial court's discretion in refusing to allow the testimony. Further, more definitive testimony of the same type was given by Dr. Case and we find no prejudice to McElhiney in the trial court's ruling.

█ McElhiney also premises error on the trial court allowing into evidence as an exhibit an exemplar vehicle and allowing the jury to view it and sit inside it. The vehicle was the same model/year and make as the McElhiney vehicle. McElhiney testified to certain differences between her car and the exemplar vehicle such as tilt steering wheel, different head rest design and different glove box design. Her expert testified that the differences were of no importance in determining the movement of the occupants' bodies during the accident. Admission of demonstrative evidence is grounded in the discretion of the trial court. *Fravel v. Burlington Northern Railroad,* 671 S.W.2d 339 (Mo.App. 1983) [1–3]. Courts in this state have admitted exhibits which were identical to or similar to or which fairly represented an object which would help the jury reach a factual determination in the case. *See, Asbury v. Fidelity Nat'l Bank & Trust Co.,* 100 S.W.2d 946 (Mo.App.1936) [7]; *Keith v. Jos. G. Schmersahl Co.,* 371 S.W.2d 334 (Mo.1963) [1]; *Carver v. Missouri–Kansas–Texas R. Co.,* 362 Mo. 897, 245 S.W.2d 96 (1952) [19]. McElhiney's theory in this case was that during the 1+ seconds that the Toyota Corolla was airborne the occupants in the vehicle essentially exchanged positions. Being able to observe a vehicle which for all practical purposes was identi-

cal to the vehicle involved, could help the jury to reach a factual determination of whether such a transfer occurred or was physically possible. We find no abuse of the trial court's discretion in admitting the exhibit and allowing the jury to observe and sit in it.

■ McElhiney next contends that the trial court erred in failing to grant her motion for judgment notwithstanding the verdict because all the expert evidence in the case established that McElhiney was the passenger in the vehicle. Credibility of the witnesses was for the jury to determine. There was substantial evidence that after the accident McElhiney was on the driver's side of the vehicle and Mossman was in the passenger compartment. There was evidence that the location of McElhiney's feet was not consistent with the position exchange testified to by her expert. McElhiney stated at the hospital that she was the driver of the vehicle. There was the fact question of who the driver was for the jury to determine.

■ Finally, McElhiney raises two claims of error based on alleged juror misconduct. As to the first the record does not establish or even allow a reasonable inference that the juror failed to truthfully respond to questions put to him on *voir dire*. Only by the most convoluted logic and unreasonable inferences can a theory of nondisclosure by the witness be imagined. As to the second point the juror denied telling the jury anything about the bar from which McElhiney and Mossman departed other than you could walk in and they would serve you if you were over twenty-one. Without needing to discuss the inability of a juror to impeach his verdict, it is sufficient to state that telling a jury that a public bar would serve the public was not prejudicial to McElhiney. We find no error.

Judgment affirmed.

GARY M. GAERTNER, P.J., and STEPHAN, J., concur.