STATE of Missouri, Respondent,

v.

James E. STRUGHOLD, Appellant.

No. 73107.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 23, 1998.

Albert S. Watkins, Richard B. Hein, Kodner, Watkins, Muchnick & Dunne, Clayton, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel W. Follett, Asst. Atty. Gen., Jefferson City, for Respondent.

AHRENS, Presiding Judge.

Defendant, James Strughold, appeals from the judgment entered on his convictions of sexual misconduct in the first degree, Section 566.090 RSMo 1994, in reference to M.B. (Count III); furnishing pornographic material to a minor, M.B., Section 573.040 RSMo 1994 (Count IV); furnishing pornographic material to a minor, K.C., Section 573.040 RSMo 1994 (Count VII); sexual misconduct in the first degree, Section 566.090 RSMo 1994, in reference to J.B. (Count VIII); furnishing pornographic material to a minor, K.J., Section 573.040 RSMo 1994 (Count X); and furnishing pornographic material to a minor, D.L., Section 573.040 RSMo 1994

(Count XI), following a jury trial. In addition to a $1,000.00 fine, the trial court sentenced defendant to a term of one year in the St. Louis City Medium Security Institution on each of the six class A misdemeanors, all sentences to run consecutively. Execution of sentence was suspended, except for a term of thirty days. The state concedes error regarding each of the six counts. We reverse and remand Counts III, IV, VII, X, and XI for a new trial. We reverse Count VIII.

Viewing the evidence presented at trial in a light most favorable to the verdict, we find the following: Defendant worked as a teacher, assistant principal and principal in the St. Louis City Public School system for thirty-five years. Defendant worked as principal at Mark Twain Elementary School up to and including the start of the 1995–96 school year. Upon promotion, defendant left Mark Twain Elementary on November 6, 1995 to become a principal at the Wilkinson School. Dr. Rosalyn Mason succeeded defendant as principal at Mark Twain Elementary.

On November 7, 1995, during a lesson about the Million–Man March, four of the five alleged child victims to whom the guilty verdicts correspond,[1] made allegations about defendant. Monica Johnson, a third grade teacher at Mark Twain Elementary, went to see Mason about the allegations. Mason told Johnson she would discuss the situation the next day.

On November 8, 1995, Johnson entered Mason's office with A.B., the mother of J.B. (one of Johnson's third grade students). A.B. expressed concern about defendant's unprofessional behavior. A.B. had previously had a conversation with her daughter in which J.B. had alleged misconduct.

Mason sent for J.B. J.B. reported to Mason's office, accompanied by her third grade classmate, K.C. J.B. repeated her allegations with K.C. and the named adults present. K.C. then stated allegations about defendant, with J.B. present. Mason then called M.B.

1. M.B., K.C., J.B., and K.J. were all students in teacher Monica Johnson's third grade class at Mark Twain Elementary. D.L., also a student at Mark Twain Elementary, was not a student in Monica Johnson's third grade class.

and K.J. to her office. Both told stories which also contained allegations about defendant. Again, the statements were made to everyone present in the office. Mason contacted her supervisor for advice. With Johnson's assistance, Mason obtained written statements from the four students on November 15, 1995.

On December 13, 1995, Officer Sheldon Wright of the Child Abuse Unit, executed a consent to search defendant's residence. Wright seized the following four magazines located in a closet of the residence: a 1989 issue of *Playboy*, a 1989 "swimsuit" issue of *Sports Illustrated*, a 1986 issue of *Penthouse*, and a 1977 issue of *Playgirl*. On December 21, 1995, Detective Robert Muffler executed a search warrant to examine any computer system located in defendant's residence. Muffler located twelve suspect graphic images in the files on the computer's hard drive. Muffler copied the twelve graphic images onto a diskette, brought the diskette to police headquarters, and printed off the images on multicolored ink-jet and laser printers. Defendant did not have a multicolored laser or ink-jet printer in his residence or at Mark Twain Elementary.

M.B., age 10 at trial, testified he would periodically get in trouble during class and would be sent down to defendant's office. M.B. testified that one time, defendant locked his door and told M.B. to "bend down and suck his dick." M.B. testified that on another occasion, defendant took him into the private bathroom attached to the office, where defendant pulled down his pants and exposed his penis to M.B. Defendant then lifted up M.B.'s shirt, rubbed his penis on M.B.'s chest, and ejaculated on M.B.'s chest. M.B. testified defendant cleaned off M.B.'s chest with a paper towel and threatened to handcuff him to the radiator if M.B. told anyone what happened. M.B. further testified that another time defendant showed him "nasty comic books" which had pictures of naked people on beds on top of each other and he could see their "privacies".

K.J., age 9 at trial, testified he repeatedly got in trouble for disrupting his class by talking and getting out of his seat. He was also sent to defendant's office on a regular basis. Additionally, he went to defendant's office to deliver the daily attendance report. K.J. testified that one time, after arriving at defendant's office, defendant showed him pictures in a book entitled *The Sex Machine*. The book contained pictures of two women dancing on a bed in bras and panties. In his written statement, K.J. claimed the pictures showed a woman having sex.

K.C., age 11 at trial, would get in trouble for running in the halls, not doing his work, fighting, and talking back to teachers. Defendant would call K.C. to his office for punishment. K.C. testified defendant showed him "nasty books", containing pictures which showed naked women having sex with men, women with their legs spread wide open, and women performing oral sex on men. K.C. also testified defendant showed him a *Playboy*. In his written statement, K.C. said a book called *The Dark Side* contained some of these photographs. K.C. further testified that one time defendant took a picture of his penis in the bathroom with an instant camera and showed it to K.C. K.C. stated that defendant threatened to kidnap K.C. and have sex with him if he told anyone.

J.B., age 11 at trial, testified that defendant watched Johnson's class one day while Johnson stepped into the hallway to speak with A.B. J.B. testified that defendant rubbed "on her behind" or rubbed her "butt" outside of her clothes with his hand and whispered to her that he wanted to have sex. She further testified that she had also been sent to defendant's office for fighting and defendant told her to "suck his dick." In her written statement, J.B. testified that while at recess defendant walked up to her and felt on her behind with his fingers. J.B. stated that defendant threatened to throw a bomb into J.B.'s house if she told anyone.

D.L.'s mother saw a news report on defendant's arrest, panicked and started questioning D.L. Ella Owens, an investigator for the Division of Family Services, interviewed D.L. Owens stated that D.L. told her he saw one

book with one picture in it. D.L. was eight years old when he testified at trial. D.L. testified that defendant showed him "nasty books", containing photographs of naked men and women. He identified the magazines found in defendant's residence and the computer printouts of the graphic images found on defendant's home computer as things defendant showed him.

Defendant raises fifteen points on appeal. The state concedes error on three points. We address the remaining points relating to these counts so that the trial court may avoid future error upon retrial.

■ The state concedes the trial court erred in denying defendant's motion for judgment of acquittal as to Count VIII, corresponding to sexual misconduct against J.B., because there was insufficient evidence adduced at trial to support a conviction for sexual misconduct under Section 566.090 RSMo 1994. We agree the trial court erred.

■ A conviction for sexual misconduct in the first degree requires proof beyond a reasonable doubt of "sexual contact" through the clothing. Section 566.010(3) RSMo 1994 defines "sexual contact", in part, as "any touching of the ... anus of another person ..." Review is limited to a determination of whether there is substantial evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995).

The state presented no evidence that defendant "touched the anus of J.B. through the clothing." J.B. testified defendant "rubbed on [her] behind" or "rubbed [her] butt", outside of her clothing. J.B. testified in her written statement that defendant "walked up to [her] and felt on [her] behind with his fingers."

"Anus" is defined as "the posterior opening of the alimentary canal." Webster's Third New International Dictionary 97 (15th ed.1966). "Behind" and "butt" are both defined as "buttocks." Webster's Third New International Dictionary 199 & 304 (15th ed.1966). The state presented sufficient evidence to show defendant touched J.B.'s buttock(s). However, to constitute "sexual contact" as set out in Section 566.010 RSMo 1994, the legislature specifically required a touching of the "genitals or anus of another person, or the breast of a female person."

Missouri courts have sustained convictions under Section 566.090 RSMo 1994 where child witnesses testified that the defendant touched their "butt" or "behind" when specific evidence supported an inference that the contact was with the "anus". *See State v. White*, 873 S.W.2d 874, 878 (Mo.App.1994); *State v. Durbin*, 834 S.W.2d 837 (Mo.App. 1992); *State v. Moore*, 721 S.W.2d 141, 143 (Mo.App.1986). In *White*, the victim's foster mother, doctor, and two social workers testified the victim told them the defendant put his penis "up his butt" and did "push-ups" on him. Additionally, the victim's foster mother testified the victim had difficulties controlling his bowels immediately after returning from defendant's home. In *Durbin*, the victim testified defendant hurt her, placed his finger near the area where she goes to the bathroom through her underwear, and that it poked inside her. The victim's testimony was sufficient to infer defendant touched her "anus". In *Moore*, the child testified the "[defendant] tried to force his penis up my behind." He also testified the defendant "told me to go wipe my behind ... [and] ... I did." Additionally, an emergency room physician found abnormal redness or "erythema around the [victim's] anus". The court held the jury could infer contact with her anus from this testimony.

In the instant case, the state made no attempt to establish the anus was the part of the anatomy J.B. referred to by use of the terms "butt" and "behind. There was no medical evidence of physical injuries consistent with sexual contact. The state presented no corroborating witnesses, despite J.B.'s testimony that others were present when the alleged rubbing occurred in the classroom. The state presented no evidence that J.B. experienced personality changes or behaved

differently after the alleged touching. *See State v. Burke*, 719 S.W.2d 887 (Mo.App. 1986). J.B.'s testimony did not imply defendant touched her "anus". J.B.'s testimony was insufficient to describe the elements essential to the offense. The record on appeal supports defendant's claim of error as confessed by the state. We reverse defendant's conviction on Count VIII.

■■■ Defendant contends the trial court erred in submitting verdict directing instructions 8, 11, 14, and 15, corresponding to Counts IV, VII, X and XI. The state concedes error. We agree the trial court erred. To support a conviction, a verdict directing instruction must require a finding of all the facts necessary to constitute an offense. *State v. Newhart*, 503 S.W.2d 62, 69 (Mo.App. 1973). A faulty instruction is grounds for reversal if defendant suffers prejudice. *State v. Betts*, 646 S.W.2d 94, 99 (Mo. banc 1983).

In the instant case, the trial court submitted to the jury verdict-directing instructions 8, 11, 14 and 15 over the objection of defense counsel. These instructions followed MAI–CR3d 327.08. These instructions defined "pornographic for minors" as "material which is a visual reproduction of a live event and which is primarily devoted to nudity, sexual conduct, sexual excitement .or sadomasochistic abuse." The Notes on Use for MAI–CR3d 327.08 indicate the definition was taken from Section 573.010(10) RSMo 1986. This definition predates the 1987 amendment to Section 573.010 RSMo, which rewrote the definition of "pornographic for minors", and thus, changed the elements of the crime. As amended in 1987, Section 573.010 states "any material or performance is pornographic for minors if the following apply:"

(a) the average person, applying contemporary community standards, would find that the material or performance, taken as a whole, has a tendency to cater or appeal to a prurient interest of minors; and

(b) the material or performance depicts or describes nudity, sexual conduct, sexual excitement, or sadomaschistic abuse in a way which is patently offensive to the average person applying contemporary adult community standards with respect to what is suitable for minors; and

(c) the material or performance, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors.

The trial court should have adapted instructions 8, 11, 14, and 15 to replace the 1986 definition of "pornographic for minors" with the three-part definition corresponding to the statute under which defendant was charged. The jury lacked the proper definition and did not have to consider or find all the facts necessary to constitute the offense charged. The error lessened the state's burden of proof to the detriment and prejudice of defendant. *State v. Lee*, 859 S.W.2d 768 (Mo.App.1993). We reverse defendant's convictions on Counts IV, VII, X, and XI, and remand these Counts for a new trial with directions to submit jury instructions which correctly parallel the statutory definition of "pornographic for minors" set out in Section 573.010 RSMo 1994.

■■■ Defendant further contends Count III and IV should be reversed and remanded because the trial court abused its discretion in denying defendant an opportunity to adduce testimony from a witness regarding M.B.'s reputation for truthfulness and in refusing to let defendant's counsel approach to make an offer of proof. The state again concedes error. Again, we agree the trial court erred.

Defendant called Nyree Yvette Betts to the stand during his case-in-chief. She testified she is a third grade teacher at Mark Twain Elementary School and knew M.B. When asked if she was familiar with M.B.'s reputation for honesty, the trial court sustained the state's objection. Defense counsel attempted to approach for an offer of proof. The trial court stated, "Sustained. You may not approach. Let's proceed."

■■■ An alleged victim in a sex offense case may be impeached by evidence that the

885

alleged victim's general reputation for truth or veracity is bad. *State v. Jones*, 914 S.W.2d 852 (Mo.App.1996). Defendant was not entitled to use Betts to impeach M.B. by describing acts of specific conduct. *Id.* Defendant argues the trial court should have allowed him to make an offer of proof, that Betts knew M.B.'s reputation for honesty and that M.B. had a bad reputation for honesty, to attack M.B.'s credibility. This is supported by *Jones*. Thus, the trial court abused its discretion. We reverse and remand with instructions to allow the testimony of Nyree Yvette Betts as to the general reputation for truth or veracity of M.B.

■ Additionally, defendant argues we should reverse Count III outright in that the state presented insufficient evidence to support the conviction. We disagree.

Specifically, defendant argues that Count III of the indictment alleged that "defendant purposefully subjected M.B. to sexual contact through the clothing without M.B.'s consent." At trial, M.B. testified defendant "picked up my shirt and rubbed his privacy against my chest", that "some kind of clear stuff" came out of defendant's "privacy" "on my chest", and that defendant wiped it off with a paper towel. Before trial, M.B. had only told Prosecutor Jane Geiler what actually happened. Defendant contends the state presented insufficient evidence that defendant "purposefully submitted M.B. to sexual contact through the clothing without M.B.'s consent" as charged. The state presented sufficient evidence to support a conviction on Count III.

■ On appeal, defendant argues the trial court erred when it submitted the verdict directing instruction for Count III, sexual misconduct against M.B. Defendant contends the instruction varied materially from the information or indictment and that defendant was, therefore, prejudiced. We disagree.

The state charged defendant with sexual misconduct against M.B. Section 566.090

RSMo 1994 provides the offense may be committed in three different ways.[2] The indictment stated "the defendant subjected M.B. to sexual contact through the clothing without M.B.'s consent." At trial, M.B. stated defendant actually picked up M.B.'s shirt and "rubbed his privacy" against M.B.'s chest. On cross-examination, M.B. mentioned he had not mentioned the removal of his shirt in his deposition or to the detectives investigating the case because he did not feel like talking about all of it at the same time.

The state submitted a verdict director that required the jury to find defendant "touched M.B. with his genitals." Defense counsel's sole objection was that the MAI–CR forms did not adequately address the problem of alternative counts. Defendant did not object to the instruction on the basis raised on appeal. See Rule 28.03.

■ Assuming arguendo that defendant made the proper objection, "[a] variance is not fatal unless it is material to the merits of the case and prejudicial to the defense of the defendant." *Conley v. State*, 765 S.W.2d 332, 333 (Mo.App.1989). Reversal is only required "if a new charge, distinct from the crime alleged, is submitted to the jury." *State v. Baker*, 850 S.W.2d 944, 952 (Mo.App. 1993). Reversal is not required as long as the indictment reasonably notified the defendant of the evidence that would be presented at trial. *Id.*

Defendant was aware of the charge of sexual misconduct involving M.B. He also knew the alleged incident involved the placing of his genitalia on M.B.'s chest while at the school. The only variance is whether the touching occurred through M.B.'s shirt or under it. Defendant has not shown he was prejudiced by this variation. Defendant maintained his innocence throughout the trial. It is not apparent how his defense would have differed. Moreover, defendant used M.B.'s previous inconsistent statements to

2. (1) by having deviant sexual intercourse with another person of the same sex; (2) by purposefully subjecting another person to sexual contact; or (3) by engaging in conduct which would constitute sexual contact except that the touching occurs through the clothing without the person's consent.

attempt to impeach the witness. Point denied.

Defendant further argues the trial court erred in denying his motion for judgment of acquittal as to Count II because the evidence at trial indicated that defendant lifted M.B.'s shirt up, rubbed his genitalia on M.B.'s chest, and ejaculated, while the indictment only alleged defendant rubbed his genitalia against M.B. through M.B.'s clothing.

■ The instruction submitted to the jury required the jury to find defendant guilty of sexual misconduct against M.B. if he "touched M.B. with his genitals". While the indictment alleged a touching through the clothing, the evidence is sufficient to support the verdict. The evidence would support a finding that defendant touched M.B. with his genitals, as the jury found. M.B. testified that defendant lifted M.B.'s shirt and touched his genitalia on M.B.'s chest. The testimony of a victim is sufficient evidence to support a conviction. *N.J.B. v. State*, 941 S.W.2d 782, 785 (Mo.App.1997). We find sufficient evidence to support the jury's findings. Point denied.

■ Defendant contends the trial court committed reversible error in admitting state's exhibits 62–68, the printouts of the graphic images found on defendant's home computer, over defendant's objection. Defendant argues that because the police department created the computer printouts, identified by witness D.L., the state failed to lay a proper foundation and therefore, misled and confused the jury. We disagree.

D.L. testified at trial that defendant showed him state's exhibits 62–68 in his office at Mark Twain Elementary. He further testified that the prosecutor showed him state's exhibits 62–68 before he came to court. Defendant objected to the admission of state's exhibits 62–68. The trial court admitted the exhibits, finding the state used an effective and economical way to display the images, without bringing in the actual computer or printing the images in some other form. Defendant argues the state im-

properly admitted the exhibits as real evidence, or alternatively, the state offered no evidence to lay an adequate foundation for admission as demonstrative evidence.

■ For a physical exhibit to be admitted as real evidence, foundation testimony must provide a reasonable assurance that the exhibit sought to be introduced is the same article and is in the same condition as when received by the state. *State v. Clay*, 817 S.W.2d 565 (Mo.App.1991); *Henson v. Board of Education of the Washington School District*, 948 S.W.2d 202, 208 (Mo.App.1997). The state did not mislead the jury into believing the computer printouts were the printouts that defendant actually showed to D.L. Detective Muffler testified he copied the files from defendant's home computer and printed them out on a printer at the police department. D.L. testified he recognized the pictures portrayed in the computer printouts, not that those specific printouts were shown to him by defendant. The state did not offer the exhibits as the actual printouts shown to D.L.

■ Defendant argues the state did not lay a proper foundation to admit the exhibits as demonstrative evidence. "Admission of demonstrative evidence is grounded in the discretion of the trial court." *McElhiney v. Mossman*, 850 S.W.2d 369, 371 (Mo.App.1993). Demonstrative evidence which tends to establish any fact in issue or throw light on a controversy and which aids the jury in any way in arriving at a correct verdict is admissible. *State v. Candela*, 929 S.W.2d 852, 867 (Mo.App.1996). Missouri courts have often admitted exhibits identical to, or similar to, or which fairly represented an object that would help the jury reach a factual determination. *McElhiney*, 850 S.W.2d at 371.

D.L. testified that the images depicted in the printouts were previously shown to him by defendant. D.L.'s testimony that the images in the printouts looked like the images shown to him by defendant established a sufficient foundation for the exhibits. Defen-

dant was charged with furnishing pornography to D.L. Viewing the images identical or similar to the images D.L. testified he was shown by defendant would help the jury reach the necessary factual determinations to convict on the charge. We find no abuse of the trial court's discretion in admitting the exhibits in question.

■ Additionally, defendant argues his due process rights were violated in that D.L.'s identification of these exhibits was highly unreliable and the product of suggestive identification procedures. Defendant points out prosecutor Geiler waited until shortly before the trial to ask D.L. if defendant had shown him the images in the printouts. D.L. identified the images, even though none of the child witnesses had previously stated they were shown computer printouts or computer images. Defendant compares D.L.'s identification of the images to suggestive and unreliable procedures used to obtain an identification of a defendant. Defendant admits he was unable to ascertain the exact procedures used by the prosecutor to elicit D.L.'s identification of exhibits and the conditions under which the identification was effectuated. Defendant had an opportunity to cross-examine D.L. The state pointed out the prosecutor had shown D.L. the exhibits prior to trial. We find no evidence that D.L.'s identification of the exhibits was a product of suggestive procedures. Point denied.

■ Defendant also contends the trial court committed prejudicial error in denying defendant's motion in limine and abused its discretion in admitting into evidence state's exhibits 73–76, the magazines found in defendant's home. Defendant argues no alleged victims identified the magazines, until D.L. did so about a week before trial at a conference with Jane Geiler. Defendant argues the process used to identify these magazines was leading, suggestive, inflammatory, and arguably unethical. The trial court did not err in admitting into evidence state's exhibits 73–76.

The trial court overruled defendant's motion in limine with respect to the magazines, and invited defense counsel to make an appropriate objection at the appropriate time. Defense counsel objected during the testimony of alleged victim D.L. Defendant argued D.L. did not previously identify the items and that a jury might easily become confused and believe these magazines were part of the alleged pornographic material shown to the children named in the indictment. The trial court overruled defendant's objection. D.L. identified state's exhibits 73–76, testifying defendant had shown him photographs from these magazines in the principal's office. The trial court admitted the exhibits over objection.

Defendant cites *State v. Bernard*, 849 S.W.2d 10 (Mo. banc 1993).[3] He argues the trial court admitted evidence of uncharged crimes, wrongs, or misconduct (harboring pornographic material), allowing the state to show the defendant's propensity to commit the charged crimes (furnishing pornography to minors). Defendant misses the mark.

■ The trial court has wide latitude in ruling on whether to admit or exclude evidence. *State v. Swigert*, 852 S.W.2d 158, 163 (Mo.App.1993). Absent a clear abuse of discretion, we will not interfere with that ruling. *Id.* We will find an abuse of discretion only if the trial court ruling clearly offends the logic of the circumstance or appears arbitrary and unreasonable. *Id.*

■ Evidence is relevant if it tends to prove or disprove a fact in issue, or if it corroborates evidence that is relevant and bears on a principal issue. *State v. Bounds*, 857 S.W.2d 474 (Mo.App.1993). D.L. identified the exhibits as magazines that defendant showed him in the principal's office. The state did not attempt to introduce evidence of uncharged crimes. The exhibits were relevant to a charge of furnishing pornography to minors. Defendant points out that D.L. had not previously identified the exhibits. Defendant had an opportunity to attack

**3.** The holding in *Bernard* has been partially superseded by Section 566.025 RSMo 1994.

D.L.'s credibility. Defendant also questioned D.L. about the conference with Jane Geiler and his decision to identify the exhibits at that time. The trier of fact could believe D.L., if they found him credible.

Additionally, defendant appears to argue that the state violated discovery rules. Defendant fails to cite a single authority on point. We find no discovery-based violations. We find no evidence to support a finding Jane Geiler acted inappropriately to induce D.L.'s initial identification of the magazines prior to trial. Point denied.

■ Following D.L.'s testimony and admission of the computer printouts as exhibits, defendant attempted to endorse Allen Wilkens as a witness for the defense. The state objected to the proferred testimony of Wilkens because he had not been endorsed by the defense as a witness. The trial court limited Wilkens's testimony to the area of defendant's computer's capabilities, regarding downloading and printing, for the purpose of rebutting the state's argument that defendant had access to the images portrayed in the exhibits.

■ Defendant chose not to call Wilkens. He did, however, make an offer of proof. Defendant planned to call Wilkens to testify that defendant hired him to build defendant's computer and install a graphics card. Moreover, Wilkens would testify he personally, not at defendant's request, downloaded the graphic images portrayed in the computer printouts, for the purpose of displaying the graphics capacity of that computer. The trial court stated that this testimony would not be relevant. The trial court is given wide latitude in ruling on questions of relevancy and, absent a clear showing of abuse of discretion, an appellate court will not interfere with that ruling. *State v. Brown*, 718 S.W.2d 493, 494 (Mo. banc 1986). The trial court did not abuse its discretion in making this determination.

■ An offer of proof must demonstrate the relevancy of the testimony offered.

*State v. Fleer*, 851 S.W.2d 582, 595 (Mo.App. 1993). Evidence is logically relevant if it helps to prove or disprove a fact in issue, or corroborate relevant evidence and relates to a principle issue in the case. *State v. Hill*, 817 S.W.2d 584, 587 (Mo.App.1991). In the instant case, the issue was whether or not defendant showed pornographic material to minors. Defendant's access to the graphic files was a relevant issue. Evidence that defendant did not originally download the files onto his computer may or may not have been logically relevant, since defendant would have had access to the files on his computer.

■ Even if logically relevant, the trial court has discretion to limit evidence if it believes the evidence is not legally relevant. Because of concerns of prejudice, confusion of the issues, or waste of time, the trial court may have determined any slight probative value was outweighed by the harm caused and was thus, legally irrelevant. If the proposed evidence would divert the jury's attention from the questions to be decided, it could be excluded. *State v. Jacobs*, 861 S.W.2d 621, 625 (Mo.App.1993). Defendant suffers no fundamental unfairness when the trial court excludes testimony that would be irrelevant. *State v. Lopez*, 836 S.W.2d 28, 33 (Mo.App.1992). The court did not abuse its discretion in limiting the testimony of Wilkens. Point denied.

■ Defendant also argues the trial court abused its discretion in granting the state's motion in limine and precluding defendant from submitting evidence regarding the nature and circumstances of the removal of M.B. from a foster home during the investigation of this case. Defendant intended to attack M.B.'s credibility by having his former foster mother say that she believed M.B. lied about the incident. The defendant also intended to show that when the foster mother told police she believed M.B. lied about the allegations, the state removed M.B. from her care. Defendant felt such statements showed bias on the part of M.B. The trial court ruled the matter should not be brought up during voir dire or opening statements.

During the state's case, defendant made no effort to inquire into the state's possible interference with M.B.'s custody. During defendant's case-in-chief, the defense made no reference to any attempt by the prosecutor to influence M.B.'s testimony or interfere with his custody. Defendant did not present the two witnesses who would have allegedly substantiated the defense theory. Defendant's point is not preserved for appellate review. A motion in limine is interlocutory in nature and thus, is subject to change during the course of trial. *State v. Purlee*, 839 S.W.2d 584, 592 (Mo. banc 1992). The motion itself preserves nothing for review. *Id.*

The defendant could have tried to present the excluded material at trial. If the trial court continued to refuse to permit reference to the matter, defendant could have made an offer of proof. *Id.* Defendant did not attempt to present the excluded material at trial. Defendant only raised the excluded material in the discussions concerning the motions in limine. Defendant did not give the court another opportunity to review its previous ruling on the motion in limine after the presentation of certain facts at trial.

■ Interest or bias of a witness is always relevant. *State v. Bounds*, 857 S.W.2d 474, 476 (Mo.App.1993). However, the scope of the evidence allowable to show interest or bias is largely within the discretion of the trial court. *State v. Dunn*, 817 S.W.2d 241, 245 (Mo. banc 1991), *cert. denied*, 503 U.S. 992, 112 S.Ct. 1689, 118 L.Ed.2d 403 (1992); *Bounds*, 857 S.W.2d at 476. The trial court allowed defendant to question the foster mother, who testified M.B. told her nothing happened with defendant. The trial court did not abuse its discretion by preliminarily ruling that the defense could go no farther. Point denied.

■ Defendant contends the trial court committed prejudicial error in submitting verdict-directing jury instruction fifteen over defendant's objection. Defendant argues this instruction placed undue importance on

the phrase "including a male penetrating the vagina of female with his penis", in an attempt to call the jury's attention to state's exhibit # 68, one of the computer printouts. Defendant relies on *State v. King*, 334 S.W.2d 34, 38 (Mo.1960), stating it is error to call attention to an isolated item of evidence. We find *State v. King* factually and legally dissimilar to the instant case.

The state submitted instruction fifteen based upon MAI–CR3d 327.08, which requires the state to "describe or identify the material" provided to the minor. The instruction submitted to the jury read, in relevant part "certain material consisting of magazines and images depicting naked and semi-naked persons, including a male penetrating the vagina of a female with his penis."

■ D.L. testified that defendant showed him magazines depicting naked and semi-naked persons and computer printouts, containing a picture of penile penetration of a vagina. The state merely inserted a description of the evidence, as instructed by the MAI. Moreover, even if the instruction supplied more information than needed, no error occurred. An instruction that adds to or increases the state's burden of proof is not prejudicial. *State v. Stoer*, 862 S.W.2d 348, 351 (Mo.App.1993). Point denied.

■ Defendant contends the trial court erred in failing to grant his motion to remove prosecutor Jane Geiler and in denying his motion for mistrial. Defendant argues Geiler was a fact witness because she interviewed the alleged victims prior to the issuance of any information or indictment, was involved in the removal of M.B. from his foster home, was the only witness who could provide the foundation for the inconsistent statement of M.B., and was capable of testifying about the procedure utilized in a conference held in the days preceding trial to procure identification of the magazines and computer printouts by D.L.

■ Defendant argues that Geiler's testimony was crucial because it would be used to

impeach M.B.'s trial testimony, which differed from previous statements. The trial court, however, gave the defendant an opportunity to cross-examine M.B. as to "whether he had told anyone else or whether Jane Geiler was the only person that he shared this information with." Defendant's counsel cross-examined M.B. M.B. admitted that he had not told the detectives, his foster mother, examining doctors, or the other children the same story he provided in court. If a prosecutor's testimony will be cumulative in nature, the trial court may prevent the prosecutor from testifying. *See State v. Calvert,* 879 S.W.2d 546, 547–48 (Mo.App.1994). It appears defendant intended to elicit cumulative testimony from Geiler, namely that M.B. had previously told her a version of the story in which defendant rubbed his penis on a clothed M.B., but did not ejaculate.

To bolster his claim that removal of the prosecutor was proper, defendant argues that M.B. only admitted he had not told others any version of the alleged events, but that Geiler would have provided non-cumulative testimony because M.B. actually told her a different version of the alleged events. After reviewing the transcript, it is apparent that defense counsel failed to cross-examine M.B. about previous versions of the same alleged events. Defense counsel did not ask M.B. if he ever told anyone a different version of the same alleged event. Defense counsel never asked M.B. if he previously provided a different version of the alleged event to Geiler. Defense counsel never asked why M.B. did not similarly describe the alleged event in his written statement. The trial court's instructions prior to defendant's cross-examination of M.B. did not prohibit defendant from this line of questioning. Point denied.

■ Defendant further contends the trial court abused its discretion in denying defendant's motion for bill of particulars because defendant was insufficiently informed of the necessary factual details of the offenses charged and unable to adequately prepare a defense. We disagree.

■ "The test of the sufficiency of an information or indictment is whether it contains all the essential elements of an offense as set out in the statute and clearly apprises the defendant of the facts constituting the offense." *State v. Fuller,* 753 S.W.2d 328, 330 (Mo.App.1988), *quoting State v. Toney,* 680 S.W.2d 268, 278 (Mo.App.1984). Misdemeanors do not require the same strictness in charging an offense as required in felonies. *Id.* at 331.

■ The trial court found the indictment had sufficient particularity to advise defendant of the charges. The trial court has broad discretion in denying or granting a bill of particulars. *State v. Cunningham,* 863 S.W.2d 914, 920 (Mo.App.1993). The trial court's ruling will not be reversed without an abuse of discretion. *Id.*

■ The indictment contained all essential elements of the crimes charged and set out the basic facts constituting the charged offenses. The indictment gave the alleged victims' names, the school year in which the alleged acts took place, the location of the alleged acts as the school, and the nature of the alleged acts. While the indictment could have been more specific, "the bill of particulars ... is not to be used for the purpose of making the State reveal the details of the evidence upon which it seeks to establish its case." *State v. Anderson,* 384 S.W.2d 591, 598 (Mo.1964).

■ Defendant contends that with regard to several of the counts, the alleged victims testified about multiple incidents and that the information did not specify which incident he was being charged for. An information cannot charge a defendant with the commission of a crime in one or more inconsistent ways. *State v. Cunningham,* 863 S.W.2d 914, 919 (Mo.App.1993). This indictment does not charge inconsistent ways of committing the crimes. The state relied on multiple incidents of alleged furnishing pornography to each minor or sexual misconduct with regard to M.B. and treated them in a cumulative fashion. Had a motion for a bill of particu-

lars been successful, defendant may have risked facing multiple counts in regard to each alleged victim, instead of one. *See State v. Dreiling,* 830 S.W.2d 521, 526 (Mo. App.1992). Moreover, defendant has gone through trial and he will know on retrial the nature of the charges against him. Point denied.

■ Defendant contends the trial court plainly erred when it failed to declare a mistrial after the state's rebuttal argument improperly personalized the argument and effectively shifted the burden of proof. We disagree.

■ A trial court has broad discretion in controlling arguments and should accord counsel wide latitude in their summations. *State v. Williams,* 849 S.W.2d 575, 579 (Mo. App.1993). Relief under the plain error rule is warranted only where manifest injustice or a miscarriage of justice results. Rule 30.20. We will not reverse a conviction for improper argument unless defendant establish the comment(s) had a decisive effect on the jury's determination. *State v. Parker,* 856 S.W.2d 331, 333 (Mo. banc 1993). Moreover, a decision to grant a mistrial is left to the sound discretion of the trial court. *State v. Clemons,* 946 S.W.2d 206 (Mo. banc 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 416, 139 L.Ed.2d 318 (1997).

Defendant points to the following remarks made during the rebuttal portion of the state's closing argument as the most prejudicial: "Kids will always mix some fantasy with fact", implying it does not mean they are lying; "Send him back to be principal of a school. You feel confident enough to do that, don't you?"; and "God help us all." Defendant contends the prosecutor personalized the argument by arousing the personal fears of the jury members and speculating about future crimes defendant may commit. *See State v. Washington,* 846 S.W.2d 794, 795 (Mo.App.1993).

■ "An argument is not 'personalized' where it does not suggest a personal danger to the jurors or their families if the defendant were to be acquitted." *State v. Storey,* 901 S.W.2d 886, 901 (Mo. banc 1995); *State v. Danback,* 886 S.W.2d 204, 209 (Mo.App.1994). The prosecutor never suggested any personal danger to the jurors or their families should defendant be acquitted.

■ Defendant further argues the prosecutor effectively reversed the burden of proof by asking the jury to feel "confident" of defendant's innocence. The prosecutor merely tried to defend the children's credibility after it had been attacked by defense counsel, during defendant's closing argument. The prosecutor explained there was no motive for the children to lie about the charges. A prosecutor has considerable leeway when the argument is retaliatory. *State v. Wright,* 941 S.W.2d 877, 882 (Mo.App. 1997).

■ Examining the prosecutor's comments in the context of the argument, we cannot say the prosecutor exceeded the bounds of permissible argument. Even if the statements were improper, trial judges "are in a much better position than the appellate court to gauge the prejudice, if any, generated by an attorney's comments." *State v. Guyton,* 635 S.W.2d 353, 359 (Mo.App.1982). The trial court did not plainly err. Point denied.

■ In his penultimate point, defendant contends the trial court erred in its rulings regarding witness Monica Johnson, the teacher in whose classroom most of the allegations arose. Specifically, defendant argues the trial court precluded him from referencing, inquiring into, or adducing evidence regarding the "permanent and progressive impairment of [Johnson's] intellectual functioning" resulting from a 1983 automobile accident, as referenced in a civil court case proceeding and in medical records. Anything that has the legitimate tendency of throwing light on the accuracy, truthfulness, and sincerity of a witness is proper for determining the credibility of the witness. *Roberts v. Emerson Elec.*

*Mfg. Co.*, 362 S.W.2d 579, 584 (Mo.1962). Mental incapacity is a factor in assessing a witness' credibility. *State v. Weber*, 844 S.W.2d 579, 581 (Mo.App.1992).

The trial court addressed this issue upon the filing of pre-trial motions, excluding medical records on Monica Johnson. A pretrial motion is interlocutory in nature and is subject to change during the course of trial. *State v. Purlee*, 839 S.W.2d 584, 592 (Mo. banc 1992). The motion itself preserves nothing for review. *Id.* A defendant must present excluded material at trial, and if the court continues to refuse to permit reference to those matters, a defendant must make an offer of proof. *Id.* Neither the state nor defendant called Monica Johnson to testify. Defendant did not give the trial court an opportunity to review its previous ruling on the motion after certain facts had come out during the trial. Defendant did not make an offer of proof. This matter is not preserved for review. Point denied.

Lastly, defendant contends the cumulative effect of errors requires outright reversal and discharge of all six counts, citing *State v. Burnfin*, 771 S.W.2d 908, 913 (Mo. App.1989). We disagree. The effect of cumulative errors may be prejudicial, requiring the judgment be set aside and the cause remanded. *Faught v. Washam*, 329 S.W.2d 588, 604 (Mo.1959). We here reverse and remand five counts for retrial. We reverse one count outright. There are no counts remaining. Defendant presents no evidence that past errors will impair his rights to a fair trial in the future. Moreover, defendant has no supporting authority for this novel concept that cumulative errors require outright reversal of all counts. Point denied.

Judgment reversed in part and reversed and remanded in part for further proceedings consistent with this opinion.

CRANDALL and KAROHL, JJ., concur.