**STATE of Missouri, Respondent,**

v.

**Bradley W. HARRISON, Appellant.**

**No. WD 56372.**

Missouri Court of Appeals, Western District.

May 18, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 1999.

Application for Transfer Denied Aug. 24, 1999.

Cheryl A. Caponegro, Atty. Gen., Jeramiah Nixon, Co–Counsel, Jefferson City, for Respondent.

Kent Denzel, Public Defender, Columbia, for Appellant.

Before HAROLD L. LOWENSTEIN, Presiding Judge, JOSEPH M. ELLIS, Judge and ALBERT A. RIEDERER, Judge.

ELLIS, Judge.

Bradley Harrison appeals from his conviction in Circuit Court of Jackson County on two counts of statutory sodomy, § 566.062,[1] four counts of first degree child molestation, § 566.067, and two counts of furnishing pornographic material to minors, § 573.040.

When viewed in the light most favorable to the verdict, the record reveals the following: Jessica Coin, six years old at the time of the alleged incidents, is the daughter of Lori Rhoads. In May 1994, Lori met and began dating Harrison. In November 1994, Lori and Jessica moved in with Harrison. They lived together as a family in various residences in Jackson County, Missouri, for approximately 18 months. During that time, Lori became pregnant and gave birth to a daughter, Brooke, on October 6, 1995.

On June 17, 1996, Jessica informed her mother that the entire time they had been living together, "Daddy"[2] had been molesting her. Jessica said Harrison had made her "pinky swear" that she would not tell about these incidents, and threatened to kill her cat, kidnap Brooke, or harm Lori or Brooke if she told. After questioning Jessica at length, Lori notified the Kansas City, Missouri police department, her pediatrician, and obtained an order of protection against Harrison.

On June 18, 1996, Jessica was interviewed by Toby Walton at the SAFE clinic at Children's Mercy Hospital. At that time, she repeated and elaborated on the events she had related to Lori. She explained that Harrison had repeatedly laid on top of her and pushed with his hips "really hard," sometimes while they were clothed, and sometimes while they were not. Jessica demonstrated with her hips, simulating sexual intercourse. She described incidents wherein Harrison would remove his pants and force her to look at him, or would come into her bed at night, fondle her, lick her genital area, and rub his private parts on her buttocks. Jessica stated that Harrison touched her with his hand and penis, both inside and outside her body.[3] She said he would force her to rub his penis for a long time, and "stuff would come out of it," which she said Harrison kept in a plastic bowl at the back of the refrigerator.[4] Jessica said Harrison asked her to put his penis in her mouth, but she refused. She also refused to lick marshmallow fluff which he put on his penis. Jessica stated that Harrison had shown her pictures in adult magazines and made her watch a pornographic video, and had told her, "This is what I want you to do when you grow up," and "he says Mom does it all the time to him." The most recent incident had occurred the day before, or June 16, 1996.

Jessica also described incidents in which Harrison would rub Brooke's foot on his penis and sigh or tell Jessica it "felt good." She stated she would try to take Brooke away from Harrison, but he refused. On several occasions, Harrison had threatened to kidnap Brooke when his relationship with Lori faltered.[5] Jessica stated she

1. All statutory references are to RSMo 1994, unless otherwise noted.

2. Jessica had begun calling Harrison "Daddy" while they lived together.

3. A medical examination of Jessica resulted in normal findings, with nonspecific vaginal itching and burning. However, Dr. Barbara Allphin, who examined Jessica, testified that her examination was consistent with sexual abuse.

4. The bowl and its contents were later recovered and tested for semen by the police department's chemist. The chemist testified that the bowl contained a biological substance, but that the test results were inconclusive. She testified that semen degrades over time and under poor storage conditions, causing it to not show up under microscopic analysis.

5. Harrison has a son, Aaron, from a prior marriage. He has no visitation privileges with Aaron, pursuant to a court order, and vowed to Lori and Jessica that he would not allow that to happen again with Brooke. Harrison testified that he would break the law

was afraid Harrison would hurt or kidnap Brooke.

In the evening of June 17th, Lori confronted Harrison with Jessica's allegations. Harrison told her Jessica had walked in on him when he was masturbating, and had wanted to watch. Harrison claimed that Jessica had asked him to "show her what mommy liked him to do to her."[6] Later that evening, Harrison drank a fifth of whiskey and took sleeping pills, in what he claimed was an attempt to commit suicide. He then called his brother and mother and told them what he had done. Harrison was taken by ambulance to Truman Hospital, where he was admitted for psychiatric treatment for four weeks.

Harrison was charged by information with two counts of statutory sodomy, four counts of child molestation, and two counts of furnishing pornography to a minor. The case was tried to a jury on September 2, 1997, and Harrison was found guilty on all charges on September 7, 1997. Harrison made a motion for a new trial, which was denied, and on October 23, 1997 he was sentenced to 27 years in the penitentiary and fined $2,000.[7] This appeal followed. The cause was initially appealed to the Missouri Supreme Court, based on Harrison's purported constitutional challenge to the validity of § 566.025.[8] The Supreme Court found the constitutional issue had not been preserved and transferred the appeal to this court.

Harrison brings four points of error on appeal. First, he asks that we find the trial court erred by failing to exclude, *sua sponte,* the testimony relating to his abuse of Brooke. He asserts this was propensity evidence and was offered solely as substantive evidence that he committed the crimes charged, pursuant to § 566.025, which was subsequently declared unconstitutional in *State v. Burns,* 978 S.W.2d 759 (Mo. banc 1998). While acknowledging that he made no objection to the evidence, Harrison argues that the trial court's failure to exclude the evidence was plain error and that manifest injustice or miscarriage of justice has resulted therefrom. Second, he argues the jury's verdicts and the court's sentences violated his constitutional right to due process of law because Count VI did not charge an offense under the law of Missouri. As a subpoint, he challenges the sufficiency of the evidence to prove the charges of statutory sodomy in Count I, child molestation in Count VI, and furnishing pornography to a minor in Counts VII and VIII. Third, Harrison alleges the trial court erred when it permitted the state to amend the information to change the dates that he allegedly committed the acts charged in Counts III, IV, V, VI, VII and VIII. Finally, he claims the trial court abused its discretion when it refused to admit evidence, offered by the defense, of Jessica's reputation for truthfulness. We conclude, for the reasons set forth *infra,*

if it suited his purpose, and would kidnap Brooke to avoid losing custody of her, even if it was not in her best interests.

6. Harrison told the arresting officer that "little girls were hitting on [him] all the time," but that Jessica fabricated the allegations as either revenge because (1) he had an affair with Lori's sister, (2) to assure that Brooke would be taken away from him, or (3) that Jessica was jealous of Brooke and wanted either Brooke or Harrison all to herself.

7. Harrison was sentenced to concurrent 20 year sentences on the two sodomy charges (Counts I and II); 7 years on each of the child molestation counts (Counts III through VI), to run concurrent with each other but consecutive to the twenty year sentences imposed in

Counts I and II; and $1,000 fine on each of the two counts of furnishing pornography to a minor (Counts VII and VIII).

8. Section 566.025 provides:

In prosecutions under chapter 566 or 568 involving a victim under fourteen years of age, whether or not age is an element of the crime for which the defendant is on trial, evidence that the defendant has committed other charged or uncharged crimes involving victims under fourteen years of age shall be admissible for the purpose of showing the propensity of the defendant to commit the crime or crimes with which he is charged, provided that such evidence involves acts that occurred within ten years before or after the act or acts for which the defendant is being tried.

that Harrison's convictions on Count VI (child molestation), and Counts VII and VIII (furnishing pornography to a minor) must be reversed. Because we find that discussion of Harrison's other arguments would have no precedential value, we affirm as to those issues by summary order pursuant to Rule 30.25(b). We are furnishing the parties a memorandum of the reasons for our decision as to those points. In this opinion, we address only whether there was sufficient evidence to prove all elements of the offense charged in Count VI (child molestation), and whether the jury instructions on Counts VII and VIII (furnishing pornography to a minor) were proper.

■ Harrison contends the evidence was insufficient for the jury to have found him guilty on Count VI, child molestation in the first degree. According to the statute, this crime occurs when a person "subjects another person who is less than twelve years old to sexual contact." § 566.067.1. "Sexual contact" is defined by the statute as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, for the purpose of arousing or gratifying sexual desire of any person." § 566.010.3. The amended information in this case alleged that Harrison "had Jessica Coin place her hand on his buttocks." Jessica testified to this effect, both in her interview and at trial. Harrison argues, and the state concedes, that he should be discharged from his conviction on this count, since "buttocks" does not equal "anus," and the state adduced no testimony that Harrison made her touch his anus.

In *State v. Strughold*, 973 S.W.2d 876 (Mo.App. E.D.1998), addressing a similar contention, the court noted that "anus" is defined as " 'the posterior opening of the alimentary canal.' " *Id.* at 883 (*quoting Webster's Third New International Dictionary* 97 (15th ed.1996)). It likewise noted that "behind" and "butt" are defined as "buttocks." *Id.* "Buttock" is defined as "either of the rounded parts at the back of

the hips." *Webster's New Twentieth Century Dictionary* 248 (2nd ed.1979). Finally, the court observed that the anus was clearly different from buttocks, and that the legislature specifically required a touching of the "genitals or anus of another person, or the breast of a female person." *Id.* The *Strughold* court went on to reverse the defendant's conviction because the only evidence was that he had rubbed the victim's "butt" or "behind." *Id* at 884.

In the instant case, the amended information charged, and the evidence established, a touching of the buttocks. However, as in *Strughold,* there was no evidence of, or inference supporting, a touching of the anus. The record supports Harrison's claim of error as candidly confessed by the State. Accordingly, Harrison's conviction on Count VI is reversed.

■ The State also confesses error as to the convictions on Counts VII and VIII (furnishing pornography to a minor) because erroneous verdict directors were submitted to the jury on these counts. The verdict directors on Counts VII and VIII required the jury to find (1) that appellant exhibited the pornographic material to Jessica, (2) that Jessica was under the age of 18 years at the time, (3) that Harrison knew that Jessica was under the age of 18 years, (4) that such material was "pornographic for minors," and (5) that Harrison at the time knew of the content and character of the material. The jury instructions contained a definition of "pornographic for minors" as "material which is a visual reproduction of a live event and which is primarily devoted to nudity, sexual conduct, sexual excitement, or sadomasochistic abuse." This definition was based on § 573.010(10), RSMo 1986. However, in 1987 the statute was amended and "pornographic for minors" is now defined as follows:

(a) The average person, applying contemporary community standards, would find that the material or performance, taken as a whole, has a tendency to

cater or appeal to a prurient interest of minors; and

(b) The material or performance depicts or describes nudity, sexual conduct, sexual excitement, or sadomasochistic abuse in a way which is patently offensive to the average person applying contemporary adult community standards with respect to what is suitable for minors; and

(c) The material or performance, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors.

§ 573.010(10) (1994). Nevertheless, at the time of Harrison's trial, MAI–CR3d 327.08 had not been revised to reflect the change in the statute and the trial court failed to adapt it to reflect the definition of "pornographic for minors" contained in the statute under which Harrison was charged.[9]

■ *Strughold, supra,* addressed the same circumstances and concluded that the defendant's convictions for furnishing pornography to a minor must be reversed and remanded for a new trial. We reach the same result for the same reasons. A verdict director must require a finding of all the facts necessary to constitute an offense. *Strughold,* 973 S.W.2d at 884. If a faulty instruction is given, and the defendant suffers prejudice, it is grounds for reversal. *Id.* In this case, "[t]he jury lacked the proper definition and did not have to consider or find all the facts necessary to constitute the offense charged. The error lessened the state's burden of proof to the detriment and prejudice of defendant." *Id.* For these reasons, we reverse Harrison's convictions on Counts VII and VIII, and remand those Counts for a new trial with directions to submit jury instructions which correctly parallel the statutory definition of "pornographic for minors" set out in current § 573.010(10).

The judgements of conviction and the sentences imposed on Counts I, II, III, IV and V are affirmed. The conviction on Count VI is reversed. The convictions on Counts VII and VIII are reversed and remanded for further proceedings not inconsistent with this opinion. A memorandum discussing the points not covered in this opinion has been furnished to the parties pursuant to Rule 30.25(b).

All concur.

---

9. The Missouri Supreme Court withdrew this instruction from MAI–CR3d by order effective October 1, 1998. It has not been replaced.